

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-15-1996

# Hofkin v. Provident Life

Precedential or Non-Precedential:

Docket 95-1608

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation
"Hofkin v. Provident Life" (1996). *1996 Decisions.* Paper 196.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/196

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-1608


MARK HOFKIN,
                    Appellant

v.

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 93-cv-01044 & 93-cv-01051)


Argued March 11, 1996

Before:  STAPLETON, SCIRICA and COWEN
                <u>Circuit Judges</u>

(Filed  April 15, 1996)

Alan I. Lourie (argued)
Law Offices of Michael Steiman
17th & JFK Boulevard
1750 Eight Penn Center
Philadelphia, PA  19103

        Counsel for Appellant

Richard L. McMonigle, Jr.
Sara J. Thomson (argued)
McKissock & Hoffman
1700 Market Street
Suite 3000
Philadelphia, PA 19103

        Counsel for Appellee

OPINION OF THE COURT


1

COWEN, <u>Circuit Judge</u>.

In this diversity action we are called upon to interpret the meaning of insurance policy language that a state statute requires to be included in all Pennsylvania insurance contracts. Plaintiff-appellant Mark Hofkin contends that language in the "Proofs of Loss" and "Legal Actions" clauses in his accident and sickness insurance policy require only that he submit adequate proofs of loss within ninety days after the termination of a continuous period of disability. Defendant-appellee Provident Life & Accident Insurance Company ("Provident") argues that it properly denied Hofkin's claims because the policy language, considered as a whole, requires the insured to submit monthly proofs of loss in order to be eligible to receive disability benefits.

Provident filed a motion to dismiss pursuant to Rule 50 of the Federal Rules of Civil Procedure on statute of limitations grounds. The district court, citing policy considerations that underlie suit limitations provisions, granted Provident's motion to dismiss. In so doing, the district court declined to follow the majority of state and federal courts that have interpreted identical policy language to require only that a claimant submit adequate proofs of loss within ninety days after an uninterrupted aggregate period of disability covered by the policy.

2

The language contained in the Provident policy is essentially a verbatim recitation of the terms of the Pennsylvania statute we must interpret. The Pennsylvania courts have not addressed the issue as to when proofs of loss are required to be filed in cases involving a continuous period of disability. We predict that the Pennsylvania Supreme Court would elect to follow the majority of courts that have interpreted the phrase "period for which the insurer is liable" to require the insured to submit proofs of loss within ninety days after the termination of a continuous period of disability, rather than on a monthly basis during the entire period of disability.

Under our interpretation of the policy language, an issue of fact remains as to whether Hofkin was totally disabled for the continuous period of time that he has alleged. As such, the order of the district court granting Provident's Rule 50 motion to dismiss will be reversed and the matter remanded for further proceedings. As to the other issues raised on this appeal, we will affirm the district court's rejection of Hofkin's argument that his claims were denied in bad faith. The district court's denial of Hofkin's application to amend his complaint will also be affirmed.

**I.**

Mark Hofkin was insured by Provident under an accident and sickness policy that took effect in July of 1980. At that time, Hofkin was the sole proprietor of a heating and air conditioning installation company. On March 13, 1986, Hofkin was

3

involved in an automobile accident in which he injured his neck, back, left wrist and elbow. Hofkin contends that he has never recovered fully from the injuries he sustained in this accident.

On September 13, 1986, Hofkin had his attorney submit to Provident a supplementary statement of claim form. On this form, Hofkin indicated that he had been totally disabled[0] from March 13, 1986 through June 16, 1986. Hofkin also contended that he was partially disabled from June 17 up until the time he submitted his claim form in September. On September 16, 1986, Provident paid Hofkin $5,760.00 for the time he was totally disabled in the months immediately following the accident. In addition to the cash payment, Provident also sent Hofkin a claim form that he was required to complete in order to be eligible to receive residual disability benefits.[0]

---

[0] The Provident policy provides the following definition of "total disability":

> (a) Until the date you attain age 55, or until the date indemnity for total disability has been paid during a period of disability under this policy for five years, whichever is later, 'Total Disability' means your inability to perform the substantial and material duties of your occupation.

App. at 21.

[0] The policy defines "residual disability" in the following manner:

> (a) your inability to perform one or more of your important daily business duties, or

> (b) your inability to perform your usual daily business duties for as much time as is usually required for the performance of such duties.

4

On January 19, 1987, Hofkin submitted an application for residual disability benefits, alleging that he had been unable to work full time since June of 1986. Hofkin failed, however, to include necessary details as to the amount of income he had lost as a consequence of the March 1986 accident. In a letter dated January 23, 1987, a Provident claims representative responded by sending Hofkin a letter requesting the additional information he would be required to provide in order to be eligible to receive any residual disability benefits.

In March of 1987, Hofkin submitted a statement of claim for residual disability benefits, a supplementary statement of claim, an accountant's report and a 1985 tax return. Again, specific financial information as to Hofkin's alleged loss of income, which was required to calculate residual disability benefits, was omitted. Within a week, a Provident representative contacted Hofkin's attorney and reiterated the insurer's need for more complete information. Hofkin responded on April 29, 1987, with a revised claim form for residual benefits, simply stating "None" where he was asked to indicate his present income. On June 25, 1987, Provident sent yet another letter to Hofkin requesting further documentation of his alleged reduction of income and additional information regarding the extent to which his business activities had been curtailed.

On March 8, 1990, after almost a three-year gap in communication between Hofkin and Provident, Hofkin's counsel

Id. at 16.

again wrote to Provident requesting additional claims forms. Although Provident supplied the forms, Hofkin never completed them. Additional proofs of loss were sent to Provident only after the onset of litigation. On March 12, 1993, June 17, 1993, June 30, 1993, March 7, 1994, and March 10, 1994, Hofkin provided supplementary proofs of loss in support of his claim for total disability benefits.

Hofkin's attorney filed a writ of summons in the Court of Common Pleas of Philadelphia County in January of 1993. In March of 1993, this matter was removed to the District Court for the Eastern District of Pennsylvania. Hofkin asserted the following claims in his district court complaint: (1) he is entitled to total disability benefits from June of 1986 until the present; (2) in the alternative, he is entitled to residual disability benefits from June of 1986, until the present; and (3) Provident has acted in "bad faith" under 42 PA. CONS. STAT. ANN. § 8371 by refusing to pay Hofkin's claims and failing to inform him of his alleged eligibility for total disability benefits at a much earlier date. Hofkin filed a motion for leave to file an amended complaint which was denied. On December 1, 1994, after a four day jury trial, the district court granted Provident's motion for judgment as a matter of law on the basis of the Legal Actions clause contained in the Provident policy. Hofkin then filed a motion to vacate the judgment as a matter of law, a motion for a new trial, and requested leave to file an amended complaint pursuant to Fed. R. Civ. P. 59. By order dated

6

June 30, 1995, the district court denied Hofkin's postjudgment motions.  This appeal followed.

## II.

The district court had jurisdiction pursuant to 28 U.S.C. § 1332.  We have appellate jurisdiction under 28 U.S.C. §1291.  An entry of judgment as a matter of law is subject to plenary review.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).  A Rule 50 motion should be granted "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability."  Id.  A Rule 50 motion must be denied "if there is evidence reasonably tending to support the recovery by plaintiff as to any of its theories of liability."  Bielevicz v. Dubinon, 915 F.2d 845, 849 (3d Cir. 1990) (citation omitted).

This dispute is governed by Pennsylvania law.  The district court's application and interpretation of state law is subject to plenary review.  C.L. Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1557 (3d Cir.), cert. denied, 115 S. Ct. 480 (1994).  As a state statute required the dispositive policy language, we must discern the intent of the Pennsylvania General Assembly, not the contracting parties.  As such, our review of the district court's interpretation of the Legal Actions clause is plenary.  See, e.g., Ogelsby v. Penn Mutual Life Ins. Co., 877 F. Supp. 872, 886 n.9 (D. Del. 1995) ("Since [the] policy provision is required by statutory mandate,

7

the Court looks to rules of statutory construction."); <u>Laidlaw v. Commercial Ins. Co. of Newark</u>, 255 N.W.2d 807, 811 (Minn. 1977) ("The usual rule of construction most favorable to the insured does not apply to a provision required by statute."); <u>cf. Margolies v. State Farm Fire and Cas. Co.</u>, 810 F. Supp. 637, 640 (E.D. Pa. 1992) (insurance company cannot contractually override the statutorily mandated suit limitation provisions of §753(A)(11)).[0]

We review the district court's denial of Hofkin's motion for leave to file an amended complaint for an abuse of discretion. <u>See</u> <u>Gay v. Petsock</u>, 917 F.2d 768, 772 (3d Cir. 1990). A district court abuses its discretion when its "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." <u>International Union, United Auto., Aerospace and Agric. and Implement Workers of Am., UAW v. Mack Trucks, Inc.</u>, 820 F.2d 91, 95 (3d Cir. 1987), <u>appeal on remand</u>, 917 F.2d 107, <u>cert. denied</u>, 499 U.S. 921, 111 S. Ct. 1313 (1991). Under Pennsylvania law, an insurer's "bad faith must be established by clear and convincing evidence and not merely insinuated." <u>Terletsky v. Prudential</u>

---

[0] This is not to say that Pennsylvania's rule of <u>contra proferentum</u> in construing policy language drafted by the insurer is necessarily inapplicable when evaluating the language of specific policy provisions required by statute. Section 753(A) expressly permits an insurer to "substitute for one or more such provisions corresponding provisions of different wording approved by the commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary." Under this analysis, if the insurer chose to modify the required language, any modifications that are ambiguous should be construed in the insured's favor. The language that we must interpret in the instant case is strictly provided by statute.

Property & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994), alloc. denied, 659 A.2d 560 (Pa. 1995).  Our review of the dismissal of Hofkin's bad faith claim as a matter of law is plenary.  Polselli v. Nationwide Mut. Fire Ins. Co., 23 F.3d 747, 750 (3d Cir. 1994).

## III.

### A.

The disposition of this case rests upon our interpretation of the Provident policy's "Legal Actions" clause and "Proofs of Loss" clause.  The Provident policy language mirrors that of the controlling statutory language:

**§ 753.  Policy Provisions**

(A) Required Provisions.  Except as provided in paragraph (C) of this section, each such policy delivered or issued for delivery to any person in this Commonwealth shall contain the provisions specified in this subsection in the words in which the same appear in this section:  Provided, however, That the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary. . . .

. . .

(7) . . .

Proofs of Loss:  **Written proof of loss must be furnished** to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss **within ninety days after the termination of the period for which the insurer is liable** and in case of

9

claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except the absence of legal capacity, later than one year from the time proof is otherwise required.

   . . .

(11) . . .

   Legal Actions: No action in law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. **No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.**

PA. STAT. ANN. tit. 40, § 753(A)(7), (11) (1992 & 1995 Supp.) (emphasis added). The only difference between the Provident Proofs of Loss clause and the language of § 753(A)(7) is the substitution of the word "Company" for "insurer." The language of the statutory Legal Actions section is identical to that contained in the Provident policy.

   The district court looked to policy considerations to support its conclusion that Hofkin's construction of the Proofs of Loss and Legal Actions clauses was "unreasonable." Looking to what it perceived to be the consequences of interpreting § 753 in the manner favored by Hofkin, the district court opined that

   [e]ven in interpreting the policy in light most favorable to plaintiff, it would be unreasonable to interpret the clause as plaintiff suggests. Under plaintiff's proposed interpretation of the three year suit limitation clause, there would be no

10

> limitation during a policyholder's lifetime until after he reaches age of fifty-five, when the policyholder would no longer meet the contract definition of total disability because of his age. Theoretically, a policyholder may sit on a claim for more than fifty years before he files suit. Therefore, the policy of having a suit limitation clause, as mandated by the State of Pennsylvania legislature, to expedite litigation and to discourage the pursuit of stale claims in order to reduce prejudice toward the defense would be inconsistent with plaintiff's interpretation.

Hofkin v. Provident Life and Accident Ins. Co., No. CIV.A.93-1044, 1995 WL 394118, at *5 (E.D. Pa. June 30, 1995).

As a general observation, we do not disagree with the district court's assessment that statutes of limitations can and do serve beneficial purposes. Indeed, the Pennsylvania Supreme Court has stated recently that statutes of limitations "are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation." Armco, Inc. v. Worker's Compensation Appeal Bd. (Mattern), 667 A.2d 710, 716 n.12 (Pa. 1995) (citations omitted). Although we agree with the district court that important policy considerations underlie suit limitation provisions, these statutes nonetheless must be enforced as written. Therefore, the policy considerations upon which the district court premised its dismissal of Hofkin's suit should not have been addressed prior

11

to making an effort to interpret what the "plain meaning" of the relevant paragraphs of § 753.[0]

The interpretation of Pennsylvania statutes is governed by the state's Statutory Construction Act of 1972, 1 PA. CONS. STAT. ANN. §§ 1501–1991 (1995 Supp.). When interpreting statutory language, the Pennsylvania Supreme Court is guided by the "plain meaning" rule of construction. Commonwealth v. Stanley, 446 A.2d 583, 587 (Pa. 1982) (citing 1 PA. CONS. STAT. ANN. § 1903(a)).[0] "When the words of a statute are clear and free of ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 PA. CONS. STAT. ANN. § 1921(b) (1995 Supp.).

Under Pennsylvania law, the policy considerations cited by the district court would have been relevant only if the court had found the language of the Proofs of Loss and Legal Actions

---

[0] Nor do all of the policy considerations involved here weigh in favor of Provident. Although Provident contended at oral argument that the plain meaning of "period for which the Company is liable" obviously referred to monthly payment intervals, when confronted with the implications of its reading of the statute, Provident attempted to distance itself from the natural consequences of this reading, contending that, in actual practice, Provident would not make monthly demands for proofs of loss upon insurance claimants.

[0] Section 1903(a) provides as follows:

> Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 PA. CONS. STAT. ANN. § 1903(a) (1995 Supp.).

clauses is ambiguous.  See id. § 1921(c).  An insurance policy term is deemed to be "ambiguous if reasonable people, considering it in the context of the entire policy, could fairly ascribe different meanings to it. . . . A court, however, should not torture the language of the policy to create ambiguities." Atlantic Mut. Ins. Co. v. Brotech Corp., 857 F. Supp. 423, 427 (E.D. Pa. 1994) (citations omitted), aff'd, 60 F.3d 813 (3d Cir. 1995).  Statutory ambiguities are to be resolved with reference to § 1921(c) of the Statutory Construction Act.[0]  We conclude, however, that when the policy language is considered as a whole, the insurance policy terms mandated by § 753 are not ambiguous and thus are amenable to "plain meaning" analysis under § 1903(a) of the Statutory Construction Act.

---

[0]  See 1 Pa. Cons. Stat. Ann. § 1921(c) (1995 Supp.):

> (c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1)  The occasion and necessity for the statute.
> (2)  The circumstances under which it was enacted.
> (3)  The mischief to be remedied.
> (4)  The object to be attained.
> (5)  The former law, if any, including other statutes upon the same or similar subjects.
> (6)  The consequences of a particular interpretation.
> (7)  The contemporaneous legislative history.
> (8)  Legislative and administrative interpretations of such statute.

Both parties contend that the policy language is not ambiguous and warrants a decision in their favor. Hofkin argues that since the Proofs of Loss section states that no proofs have to be submitted until "90 days after the termination of the period for which the Company is liable," there is a jury question as to whether Hofkin met the contractual definition of total disability on a continuous basis.

Provident, on the other hand, places emphasis upon the terms "periodic payment," "period" and "monthly" in the policy language. Provident notes that the Proofs of Loss clause states that "for loss for which this policy provides any **periodic payment** contingent upon continuing loss," written proof of loss must be furnished "within 90 days after the termination of the **period** for which the company is liable." Provident also refers to language contained in the policy's "Time of Payment of Claims" clause,[0] which states, in relevant part, that "subject to due

---

[0] <u>See</u> PA. STAT. ANN. tit. 40, § 753 (A)(8):

> Time of Payment of Claims: Indemnities payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of due written proof of such loss. Subject to due written proof of loss, all accrued indemnities for loss for which this policy provides periodic payment will be paid . . . . . . . . . . . . (insert period for payment which must not be less frequently than monthly) and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of due written proof.

written proof of loss, all accrued indemnities for loss for which this policy provides **periodic payment** will be paid **monthly**." Provident construes this language as meaning that the "periodic payment" interval is what determines the subsequently referenced "period for which the Company is liable." Under this interpretation, the Legal Actions clause's three-year limitation period would begin to run after the expiration of the ninety-day period following the first month for which benefits are at issue.

Although Pennsylvania state courts have not ruled upon this question, a significant number of state and federal courts have addressed the issue as to how the same (or virtually indistinguishable) statutorily mandated insurance policy language should be construed. A substantial majority of those courts have expressly rejected Provident's construction of the statute, holding that the most plausible reading of "period for which the Company is liable" requires that this phrase be interpreted to encompass the entire length of an ongoing period of disability.

The meaning of the phrase "period for which the Company is liable" was most recently discussed by the district court in Ogelsby v. Penn Mutual Life Insurance Co., 877 F. Supp. 872 (D. Del. 1994). The Ogelsby court interpreted insurance policy language prescribed by Delaware law which was essentially identical to the policy language at issue here. See 18 Del. C. §3311 ("Written proof of loss must be furnished to the company at

Within the terms of this section, Provident elected to set the payment period on a monthly basis.

15

its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the company is liable. . . ."), quoted in Ogelsby, 877 F. Supp. at 885 n.7. The Ogelsby court elected to follow the weight of authority in this area of the law, noting that "the interpretation that plaintiff advances has been characterized as the most natural interpretation." Ogelsby, 877 F. Supp. at 886.

The one Pennsylvania diversity case that has expounded upon the same Pennsylvania statute that we must interpret has also favored Hofkin's interpretation of § 753. In Liberto v. Mutual Benefit Health & Accident Ass'n, 323 F. Supp. 1274 (W.D. Pa. 1971), an action was brought to recover under an accident policy four years after the company had discontinued paying benefits. Id. at 1275. The insurer argued that the plaintiff's claim was time barred under § 753. Expressly rejecting this argument, the district court held that the policy's Proofs of Loss and Legal Actions clauses, considered along with other language in the policy providing that "the insurer is liable to pay the totally and permanently disabled insured `so long as the insured lives'," id. at 1276, necessarily led to the conclusion that the three-year period in the Legal Actions clause had not yet run, and would not be triggered until the claimant was deceased. By analogy, the continuing period of disability in the instant case could conceivably continue until Hofkin reached age fifty-five, the expiration date of the policy.

16

In *Wall v. Pennsylvania Life Insurance Co.*, 274 N.W.2d 208 (N.D. 1979), the Supreme Court of North Dakota interpreted identical language from state-required Proofs of Loss and Legal Actions clauses. Adopting the reasoning of the court below, the *Wall* court held that the

> "period for which the insurer is liable" phrase means the total period of liability in a continuous disability case and not a monthly period during which benefits accrue. Penn's own provision authorizing monthly benefits payments does not alter the specific wording of [the statute which provides] that proof of loss must be filed only after the insurer's liability terminates.

*Id.* at 213-14. The supreme court agreed with the lower court's determination "that Wall's claim against Penn. Life was based upon continuing disability, Penn. Life's period of disability had not terminated, proof of loss was not yet required to be furnished and the Statute of Limitations had not begun to run." *Id.* at 214. *See* *Goodwin v. National Ins. Co.*, 656 P.2d 135, 143-44 (Idaho Ct. App. 1982) (same).

Similarly, interpreting Arkansas law, the Court of Appeals for the Eighth Circuit has concluded that

> [a]ny theory that supplying of proof of loss was a condition precedent to liability under the policy tends to be dispelled by the following policy language: "written proof of loss must be given . . . within 90 days after . . . the period for which the company is liable." . . . Thus the policy itself contemplates that proof of loss may be submitted after disability terminates; and at least to some extent difficulty the insurer may have in investigating a disability that has already ended is part and parcel of the insurance agreement.

17

Clark v. Massachusetts Mut. Life Ins. Co., 749 F.2d 504, 507 (8th Cir. 1984).

The Supreme Court of Minnesota has also addressed this issue. In Laidlaw v. Commercial Insurance Co. of Newark, 255 N.W.2d 807 (Minn. 1977), the court held that an expansive interpretation of "period for which the Company is liable" was warranted by identical language contained in the Proofs of Loss and Legal Actions clauses, considered along with substantially similar language contained in a Time of Payment of Claims clause. The Laidlaw court found that Hofkin's interpretation of "period for which the Company is liable" was "the most natural interpretation of the phrase," id. at 811, and held that "`the period for which (Company) is liable' refers to the total continuous period of disability, be it short or long, and not individual four-week periods." Id. When a Laidlaw-type claim is presented, "the question becomes whether a genuine issue of material fact exists as to the existence and continuity of [the claimant's] total disability." Ryan v. ITT Life Ins. Corp., 450 N.W.2d 126, 129 (Minn. 1990).

A New York trial court has also addressed this specific issue and concluded that judgment as a matter of law was inappropriate. In Turner v. Mutual Benefit Health & Accident Ass'n, 160 N.Y.S.2d 883, 890 (Sup. Ct. Oneida Cty. 1957), aff'd, 172 N.Y.S.2d 571 (App. Div. 1958), the New York supreme court, interpreting the phrase "period for which the Association is liable," noted that

18

plaintiff's affidavit detail[ed] at length
his circumstances during the period in
question and sets forth facts which, if
believed, might establish that he has been
continuously disabled . . . .  In these
circumstances, an issue of fact is presented
which cannot be disposed of on a motion for
summary judgment.

Finally, in Continental Casualty Co. v. Freeman, 481 S.W.2d 309 (Ky. 1972), the court interpreted identical language in the Legal Actions and Proofs of Loss clauses as meaning

either (a) that one proof of loss will
suffice for one continuous period of
disability or (b) that each month of
continuing loss must be covered by a proof of
loss submitted within 90 days thereafter.
Neither of these alternatives would appear to
achieve an entirely satisfactory arrangement,
but we see no room for any other possible
construction of the sentence as it is worded.
The most natural import of the expression
'the period for which the company is liable'
is the total continuous period, be it five
days or five years

Id. at 312.  Interpreting the statutory language in a manner that favored the insured, the Freeman court concluded that "the clause is not ambiguous and there is no reason not to construe it as meaning just what it says."  Id. at 311-12.

There is, however, some case authority in support of Provident's position as to how the policy language at issue should be interpreted.  In Nikaido v. Centennial Life Insurance Co., 42 F.3d 557 (9th Cir. 1994), the Ninth Circuit, applying

19

California law, held that a "more reasonable reading of these provisions" supports the conclusion that "`the period for which the Company is liable' refers to each month of disability."  Id. at 560.

Similarly, in Goff v. Aetna Life and Casualty Co., 563 P.2d 1073 (Kan. Ct. App. 1977), a state appellate court also interpreted "period for which the insurer is liable" in the manner that Provident urges us to adopt.  The state court concluded that

> [th]e phrase [period for which the insurer is liable] speaks of a 'period' and applies only in a case where 'any periodic payment' is due under the pollicy (sic).  Where, as here, payments are due monthly it seems inescapable that each month for which a payment is due is a 'period for which the insurer is liable.'

Id. at 1077.

We expressly reject and depart from this reasoning and analysis.  We agree with the North Dakota Supreme Court's statement in Wall that the policy language "authorizing monthly benefits does not alter the specific wording of [the policy] that proof of loss must be filed only after the insurer's liability terminates."  Wall, 274 N.W.2d at 214.  Provident's reading of §753, by contrast, is far less straightforward.  To adopt Provident's "plain meaning" interpretation would require the adaptation of a strained analytical framework that imparts questionable significance to various discrete references in the statute.  See Bertera's Hopewell Foodland, Inc. v. Masters, 236 A.2d 197, 204 (Pa. 1967), appeal dismissed, 390 U.S. 597, 88 S.

20

Ct. 1261 (1968) ("A statute cannot be dissected into individual words, each one being thrown onto the anvil of dialectics to be hammered into a meaning which has no association with the words from which it has violently been separated."), overruled on other grounds by Goodman v. Kennedy, 329 A.2d 224 (Pa. 1974). The "plain meaning" that Provident asks us to adopt is not at all clear from the face of the statute.

If the Proofs of Loss clause had simply included the word "monthly" before "period for which the Company is liable" Provident's reading of the statute would obviously be correct. In order to obtain such a change, however, Provident would be required to obtain the approval of the Commissioner of Insurance. See PA. STAT. ANN. tit. 40, § 753(A). We seriously doubt that such permission would be forthcoming. Given our interpretation of the statute and the weight of authority interpreting essentially identical policy language, we refuse to interpolate by judicial fiat the term "monthly" before "period for which the Company is liable," when the Pennsylvania General Assembly declined to follow this course.

**IV.**

The district court also based its decision that Hofkin's claim was timed barred on the alternative ground that even if Hofkin's reading of the statute were to be adopted, the fact that Hofkin gave timely notice of the March 1986 accident and that he

> last submitted [a] claim . . . on April 29,
> 1987, the running of the three year time
> limit for filing suit under the Legal Actions

21

> clause was triggered at that time because the submission, which also included submissions on behalf of plaintiff by his attorney and physicians, constituted sufficient proofs of loss.

Hofkin, 1995 WL 394118, at *3. The district court went on to say that

> [r]egardless of when proof of loss was required to have been furnished under the Proofs of Loss clause to trigger the Legal Actions clause as interpreted by plaintiff or the court, plaintiff admits in his complaint that he gave timely notice of his accident and that he provided the defendant with all required proofs of loss. Therefore, in having fulfilled his obligation to provide proofs of loss, he was under obligation mandated by statute to file suit within three years after the time proofs of loss were required to be furnished. Clearly he did not do so, and that is why plaintiff is barred from proceeding in this case.

Id. at *6. We reject this reading of § 753(A)(11). The Legal Actions clause provides, in relevant part, that "No action . . . shall be brought after the expiration of three years after the time written proof of loss is required to be furnished." PA. STAT. ANN. tit. 40, § 753 (A)(11) (1992 & 1995 Supp.) (emphasis added). Nothing in this language suggests that Hofkin should be penalized for at least attempting, however intermittently, to provide proofs of loss at an earlier time than is required by §753(A)(11). We therefore conclude that a factual issue remains as to the period of time, if any, that Hofkin was continuously disabled in order to assess properly his eligibility for total disability or residual disability benefits.

22

We must still dispose of two other issues Hofkin has raised on appeal;  i.e., Hofkin's bad faith claim and his argument that he was improperly denied the opportunity to amend his complaint.  We reject both of these claims.

**A.**

Pursuant to 42 Pa. Cons. Stat. Ann. § 8371 (1982 & 1995 Supp.), an insurer can be held liable for punitive damages and other sanctions if it is found to have acted in bad faith toward the insured.[0]  Based on proofs of loss that Provident had received in 1986, Hofkin alleges that Provident was aware that he has been totally and continuously disabled since that time. Thus, the argument goes, by informing him that he may qualify for additional residual disability benefits but not telling him that he might qualify for additional total disability benefits, Provident had acted in bad faith.  As the district court noted,

---

[0]  Section § 8371 provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith towards the insured, the court may take all of the following actions:
> (1)  Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2)  Award punitive damages against the insurer.
> (3)  Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

however, § 8371 did not take effect until July 1, 1990. <u>Liberty Mut. Ins. Co. v. Paper Mfg. Co.</u>, 753 F. Supp. 156, 158 (E.D. Pa. 1990). Therefore, even if we were to assume <u>arguendo</u> that Provident acted in bad faith before that date, such conduct is not actionable under § 8371. <u>Lombardo v. State Farm Mut. Ins. Co.</u>, 800 F. Supp. 208, 213 (E.D. Pa. 1992). Furthermore, Hofkin has failed to provide clear and convincing evidence that Provident acted in bad faith after July 1, 1990. The record is clear that Hofkin and the attorneys retained in his on-and-off pursuit of earlier benefits claims have been less than diligent in providing information that was necessary to evaluate Hofkin's various claims. The record does not show that Provident engaged in any improper business practices. At most, Provident appeared to hold Hofkin to its own regulations. There was plainly no bad faith here.

**B.**

Finally, the district court did not abuse its discretion by denying Hofkin's motion for leave to file an amended complaint. Hofkin filed the motion to amend on September 22, 1994, seeking to include a claim for refund of premium. Hofkin concedes that his complaint did not specifically plead waiver of premium but argues that the "Wherefore" clause of the complaint, which stated that Hofkin was entitled to "any other relief this Honorable Court deems appropriate," was sufficient to apprise Provident of Hofkin's intention to seek a refund of premium in this case. We disagree. Given the late date of the

24

request and the prejudice it would impose upon Provident (requiring it to prepare new defenses), the district court did not abuse its discretion in denying Hofkin's motion to amend his complaint.

## VI.

We hold that the Pennsylvania Supreme Court would adopt the majority approach and interpret "the period for which was Company is liable" language in the Proofs of Loss clause as referring to a continuous period of disability. Under this analysis, it is still possible that the suit limitation provision in the Legal Actions clause has not yet been triggered. Therefore, the order of the district court granting Provident's Rule 50 motion for judgment as a matter of law will be reversed and the matter remanded to the district court to conduct the necessary fact finding. We will affirm the June 25, 1995 order of the district court insofar as it denied Hofkin's bad faith claim and his motion to amend his complaint. Costs taxed against the appellee.