

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2006

# Knoepfler v. Guardian Life Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 05-1186

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Knoepfler v. Guardian Life Ins Co" (2006). *2006 Decisions*. Paper 1496.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1496

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1186

———————

JERROLD B. KNOEPFLER,

<u>Appellant</u>

v.

GUARDIAN LIFE INSURANCE COMPANY OF AMERICA;
BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,
a subsidiary of the Guardian Life Insurance Company of
America

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-05186)
District Judge: Hon. William H. Walls

———————

Argued October 18, 2005

BEFORE: SCIRICA, <u>Chief Judge</u>, VAN ANTWERPEN and
COWEN, <u>Circuit Judges</u>

(Filed :   February 27, 2006)

Robert E. Margulies, Esq. (Argued)
Margulies, Wind & Harrington
15 Exchange Place
Suite 510
Jersey City, NJ 07302

Counsel for Appellant

1

David R. Kott, Esq.
Robert P. Lesko, Esq. (Argued)
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, NJ 07102-0652

Counsel for Appellees

---

OPINION

---

COWEN, Circuit Judge

   Jerrold Knoepfler, the insured, appeals the order of the district court granting summary judgment in favor of defendant-appellees Guardian Life Insurance Company of America and Berkshire Life Insurance Company of America (collectively "Guardian") on his claims for benefits under two policies of disability insurance. The district court found that the claims were time-barred based upon a policy provision which requires actions to be brought no more than three years after written proof must be furnished. This appeal calls upon us to construe the policy language which fixes the time for furnishing written proof. The policies provide that the insured must furnish proof of loss within ninety days after "the end of the period for which [the insurer is] liable." Knoepfler argues that this language requires an insured with an ongoing disability to furnish written proof after the end of the entire period of disability, while Guardian contends that the insured is required to submit proofs of loss after the end of each month of disability. Because we predict that the New Jersey Supreme Court would construe the policy language to require proof of loss after the end of the entire period of disability, we will reverse.

I.

   On April 4, 1990, Jerrold Knoepfler purchased two policies of disability insurance ("Policies") from Guardian.

2

Knoepfler claims entitlement to disability benefits under the Policies based upon an illness that began in November or December of 1992 and continues to the present.

In September 1995, Knoepfler furnished written notice of claim to Guardian. In October 1995, Knoepfler furnished written proof of loss to Guardian. Thereafter, Guardian conducted an investigation of the claim. In a letter dated March 5, 1997, Guardian unequivocally denied coverage.

The Policies under which Knoepfler claims entitlement to benefits are: (1) a Professional Disability Income Policy (Policy No. G-709770) ("Personal Liability Policy"), which provides for payment of benefits in the event of total and/or residual disability as defined therein;[1] and (2) an Overhead Expense Disability Income Policy (Policy No. G-709771) ("Overhead Expense Policy") (collectively the "Policies"), which provides for payment of benefits in the event of total disability as defined therein.[2]

The Policies each contain a "Legal actions" provision and a "Time for filing proof of loss" provision ("Proof of loss" provision). The Legal actions provisions in the Policies read as follows:

> No one can bring an action at law or in equity under this policy until 60 days after written proof has been furnished as required by this policy. In no case can an action be brought against Guardian more than three years after written proof must be furnished.

(App. at 97a, 129a.) The Proof of loss provision in the Personal

---

[1] The definitions of the terms "total disability" and "residual disability" are not relevant to this appeal, and we make no finding as to whether Knoepfler's alleged illness qualifies as either a "total disability" or a "residual disability."

[2] *See supra* note 1.

3

Liability Policy reads as follows:

> We are liable for benefits at the end of each month
> while you are disabled beyond the elimination
> period until the benefit period ends or, if earlier,
> the date you recover.
>
> You must give us proof of loss at our home office or at
> any agency office:
>
> - for loss from disability within 90
>   days after the end of the period for
>   which we are liable; and
> - for any other loss within 90 days after the
>   date of loss.
>
> If you cannot reasonably give us proof within such
> time, we will not deny or reduce claim if you give
> us proof as soon as possible. But we will not pay
> benefits in any case if proof is delayed for more
> than a year, unless you have lacked legal capacity.

(App. at 97a.) The Proof of loss provision in the Overhead
Expense Policy reads as follows:

> We are liable for benefits at the end of each month
> while you are disabled beyond  the elimination
> period until the aggregate benefit is reached or, if
> earlier, the date you recover.
>
> You must give us proof of loss at our home office
> or at any agency office within 90 days after the end
> of the period of disability for which we are liable.[3]

---

[3] The Overhead Expense Policy refers to the "period of disability for which we are liable," whereas the Personal Liability Policy omits the word "of disability," providing only the "period for which we are liable." For ease of reference, we will singularly refer to the phrase "period for which we are liable."

If you cannot reasonably give us proof within such time, we will not deny or reduce claim if you give us proof as soon as possible. But we will not pay benefits in any case if proof is delayed for more than one year, unless you have lacked legal capacity.

(App. at 129a.)

The Legal actions and Proof of loss provisions are included in the Policies by statutory mandate. N.J. Stat. Ann. § 17B:26-3. The wording of the Legal actions provisions in the Policies mirrors that of the corresponding statutory provision. N.J. Stat. Ann. § 17B:26-14. The wording of the Proof of loss provisions in the Policies, however, does not mirror the wording of the statutory proof of loss provision, reflecting modifications that Guardian made to the statutory provision, the latter of which reads as follows:

Proofs of loss: Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the insurer is liable and in case of claim for any other loss within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than 1 year from the time proof is otherwise required.

N.J. Stat. Ann. § 17B:26-10. The Commissioner of Insurance approved the modifications which Guardian made to the statutory provision.

II.

5

On October 10, 2001, Knoepfler filed an action against Guardian[4] in state court in New Jersey, seeking recovery of disability benefits under the Policies. Guardian removed the action to the United States District Court for the District of New Jersey on the basis of diversity of citizenship.

On March 25, 2004, Guardian moved for summary judgment, arguing that the action was barred by the three-year period of limitations set forth in the Legal actions provision of the Policies. Guardian contended that the phrase "period for which we are liable" in the Proof of loss provision refers to a monthly period, such that proof of loss is required to be furnished within ninety days after the end of each month of disability for which Guardian is liable. Applying this construction of the policy language, Guardian claimed that Knoepfler was required to furnish proof of loss within ninety days after the end of the first month of his alleged disability, i.e., by the end of March 1993, or, at the latest, within the one-year grace period thereafter. Guardian argued that the three-year period of limitations expired by the end of March 1997, and, thus, this action was not timely filed.

Knoepfler opposed the motion, contending that proof of loss is not required to be furnished until after the end of the entire period of continuous disability for which Guardian is liable. Since his alleged disability is ongoing, Knoepfler argued that the three-year period of limitations has not started to run.

Citing to the New Jersey appellate case of *Mosior v. Insurance Company of America*, 473 A.2d 86 (N.J. Super. Ct. App. Div. 1984), the District Court granted the motion for summary judgment in Guardian's favor, holding that the action was time-barred as a result of the period of limitations. The District Court found that *Mosior* had "interpreted a similar policy

---

[4] According to defendant-appellees, Berkshire Life Insurance Company of America did not issue either of the Policies in controversy and did not become successor-in-interest to Guardian Life Insurance Company of America's policies and obligations when it merged with Guardian in 2001.

6

provision to preclude a suit filed more than three years after the 90-day proof of loss deadline had passed, despite the plaintiff's alleged ongoing disability." (Order and Opinion at 7.) However, the District Court also noted that "the Policies are ambiguous as to the precise time in which Plaintiff was required to file his proof of loss. . . ." (*Id.* at 8.) Nevertheless, citing to *Mosior* and the public policy considerations underlying periods of limitations, the District Court concluded that "it was not reasonable for Plaintiff to believe that his right to file suit under the Policies would survive four years after the final denial of his claim." (*Id.*)

## III.

Knoepfler's appeal challenges the grant of summary judgment on two principal grounds: (1) *Mosior,* the New Jersey appellate case upon which the District Court relied, never reached the issue posed for adjudication in this case; and (2) the majority of courts, including this Court in *Hofkin v. Provident Life & Accident Insurance Co.*, 81 F.3d 365 (3d Cir. 1996), have interpreted the language "period for which we are liable" as requiring proof of loss to be furnished after the end of the entire period of continuous disability, and there is no reason to conclude that the New Jersey Supreme Court would depart from the majority view.

## A.

Knoepfler claims that the *Mosior* court did not construe the policy language at issue in this case. In *Mosior*, an insured brought an action against the insurer to recover benefits for permanent disability under a group accident insurance policy. 473 A.2d at 87. The insurer in *Mosior* argued that the insured had failed to bring the action within the three-year period of limitations specified in the policy. *Id.* As in this case, the period of limitations provision in *Mosior* barred any action brought more than three years after the time written proof of loss was required. *Id.* at 88. The policy in *Mosior* contained the following proof of loss provision:

Proofs of Loss: *Written proof of loss must be*

7

> *furnished to the Company* at its said office in case
> of claim for loss for which this policy provides any
> periodic payment contingent upon continuing loss
> within ninety days after the termination of the
> period for which the Company is liable and in case
> of claim for any other loss *within ninety days after
> the date of such loss*. Failure to furnish such proof
> within the time required shall not invalidate nor
> reduce any claim if it was not reasonably possible
> to give proof within such time, provided such proof
> is furnished as soon as reasonably possible.

*Id*. (emphasis in original). The Law Division agreed with the insurer and granted summary judgment in its favor. *Id*. at 87.

On appeal, the New Jersey appellate court affirmed. *Id*. at 90. In determining whether the insured had commenced suit within the three-year period of limitations, the court stated that the "date of loss" was the critical date. *Id*. at 88. The court found that the date of permanent total disability was the date of the insured's loss, and thus that the insured was required to furnish proof of loss within ninety days of the date of his permanent total disability. *Id*. Since the insured had not commenced suit within three years thereafter, the *Mosior* court held that the action was time-barred. *Id*.

Based upon a close reading of *Mosior,* we conclude that it has no application to the facts of this case. At issue in *Mosior* was the second clause of the proof of loss provision, which requires proof to be furnished "for any other loss within ninety days after the date of such loss." In determining when proof of loss was due, the *Mosior* court focused upon "the date of loss," which language is contained only within the second clause of the proof of loss provision. The only portion of the proof of loss provision that is italicized in *Mosior* is the second clause.

Significantly, the *Mosior* court did not analyze the first clause of the proof of loss provision which contains the language at the heart of this dispute: "in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the

8

period for which the Company is liable." 473 A.2d at 88. There was no discussion in *Mosior* regarding the meaning of the phrase "period for which [the insurer is] liable." Presumably, the *Mosior* court did not have any need to construe the first clause of the proof of loss provision because a permanent disability is a forgone loss, not "contingent" upon continuing loss.

Guardian makes the flawed argument that the italics in *Mosior* emphasizing the language "within ninety days after the date of such loss" may not have been supplied by the court. Guardian surmises that the italics appeared in the underlying insurance policy. However, the *Mosior* court stated that the policy provisions complied with the relevant statutory provisions, which do not contain any italics. *Id.* at 88. Moreover, even if the italics had not been supplied by the court, the unmistakable focus of the *Mosior* court's discussion was on the "date of loss," not the language at issue in this case.

Guardian also contends that *Mosior* is authority for the proposition that Knoepfler should not be allowed to "s[i]t on his rights for over four years after Guardian unconditionally denied his claims." (Appellee's Brief at 24.) The District Court agreed, stating:

> In accordance with the New Jersey Appellate Division's *Mosior* decision, this Court finds that the Policies' period of limitations began to run upon the "cessation of any basis for continued reliance" by Plaintiff on the Defendants. Plaintiff's claims were unconditionally denied on March 5, 1997. It was not reasonable for Plaintiff to rely on Defendants' conduct past this point.

(Order and Opinion at 8-9.)

Once again, we cannot accept Guardian's interpretation of *Mosior* as applied to the facts of this case. In *Mosior,* the insured claimed that the insurer was equitably estopped from raising the period of limitations defense because the insurer never informed him of the relevant policy coverage. 473 A.2d at 89. The *Mosior* court refused to apply the doctrine of equitable estoppel

9

in the insured's favor because the record showed that after the insured obtained knowledge of the policy change, there were still twenty-two months remaining under the applicable limitations period. *Id.* at 90. The district court explained that the doctrine of equitable estoppel does not apply where "after the cessation of any basis for continued reliance by a plaintiff on the conduct of a defendant, there remains a reasonable time under the applicable limitations period to commence a cause of action." *Id.* (citing *Ochs v. Federal Ins. Co.*, 447 A.2d 163, 168 (N.J. 1982)).

In this case, Knoepfler's argument is that the period of limitations has not begun to run because the time for furnishing proof of loss has not started. Knoepfler has not argued that Guardian should be equitably estopped from raising the period of limitations defense at all. Thus, we need not concern ourselves with the various permutations of the doctrine of equitable estoppel, including the circumstances under which application of the doctrine is inappropriate, such as unreasonable delay on the part of the insured. Under the terms of the Policies, the only event which triggers the running of the period of limitations is the deadline for furnishing written proof of loss. Knoepfler's decision to wait four years after Guardian's unconditional denial of coverage to commence this action has no bearing whatsoever on the issue of whether the period of limitations has run or started to run.[5] Guardian's reliance on the *Mosior* case is misplaced. In summary, we conclude that *Mosior* does not answer the question posed for adjudication in this case.

B.

Having concluded that the issue posed for adjudication in this case was not addressed by the court in *Mosior,* or any other New Jersey state court, we must predict how the New Jersey Supreme Court would interpret the language "period for which we are liable." Knoepfler contends that there is no reason to conclude that the New Jersey Supreme Court would depart from the majority view which construes the language "period for

---

[5] Neither party has raised the doctrine of laches, and thus, we do not consider whether it applies under the facts of this case.

10

which we are liable" as requiring proof of loss to be furnished after the end of the entire length of an ongoing period of disability.[6] Knoepfler emphasizes that in *Hofkin*, we construed nearly identical policy language required by a Pennsylvania statute and predicted that the Pennsylvania Supreme Court would adopt the majority approach. Knoepfler urges us to apply our analysis in *Hofkin* to the facts of this case.

In *Hofkin*, the insured brought an action against the insurer, Provident Life & Accident Insurance Company ("Provident"), for the recovery of total or residual disability benefits more than six years after the beginning of the relevant period of disability. 81 F.3d at 368. Provident argued that the action was time-barred by the legal actions clause contained in the insurance policy. *Id.* The legal actions clause, like the one in the instant case, barred actions brought three years after the time written proof of loss was required to be furnished. *Id.* at 370. The proof of loss provision in *Hofkin*, which was required by a Pennsylvania statute, read as follows:

> Proofs of Loss: Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss *within ninety days after the termination of the period for which the Company is liable* and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible

---

[6] *See, e.g., Hofkin*, 81 F.3d at 374; *Clark v. Massachusetts Mut. Life Ins. Co.*, 749 F.2d 504, 507 (8th Cir. 1984); *Furleigh v. Allied Group Inc.*, 281 F. Supp. 2d 952, 971-72 (N.D. Iowa 2003); *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 886-87 (D. Del. 1994); *Liberto v. Mutual Benefit Health & Accident Ass'n*, 323 F. Supp. 1274, 1276 (W.D. Pa. 1971); *Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W.2d 807, 811 (Minn. 1977); *Panepinto v. New York Life Ins. Co.*, 688 N.E.2d 241, 244 (N.Y. 1997); *Wall v. Pennsylvania Life Ins. Co.*, 274 N.W.2d 208, 213-14 (N.D. 1979).

to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except the absence of legal capacity, later than one year from the time proof is otherwise required.

*Id.* (emphasis added).

Like Guardian in this case, Provident argued that the above-italicized portion of the proof of loss provision required proof to be furnished within ninety days after the end of each monthly period for which Provident is liable. *Id.* at 367, 371-72. Relying upon the term "periodic payment" in the proof of loss provision, as well as the language "periodic payment will be paid monthly" in a separate section of the policy, Provident argued that the "period for which the Company is liable" is a monthly period. *Id.* at 371-72. In response, the insured in *Hofkin* contended that, under the plain language of the provision, proof of loss was not required until the end of the continuous period of disability. *Id*. at 367. The district court agreed with Provident, reasoning that the insured's construction of the policy language was inconsistent with the policy considerations underlying suit limitation provisions of expediting litigation and discouraging the pursuit of stale claims. *Id.* at 370.

On appeal, we reversed the order of the district court. *Id.* at 375. In reaching our decision, we first observed that under Pennsylvania law, the district court should not have relied upon public policy considerations unless it found the relevant policy language to be ambiguous. *Id.* at 370-71. Noting that both parties agreed that the policy language was unambiguous, we found that the language was amenable to a "plain language" analysis. *Id.* at 371. Applying a plain language analysis, we agreed with the majority view that the language "period for which the Company is liable" most plausibly refers to the entire period of continuous disability. *Id.* at 372-74. We reasoned that the proof of loss provision did not contain the word "monthly" before the phrase "period for which the Company is liable," and that the insurer's obligations with respect to payments on a "periodic" or "monthly" basis did not alter the language which required proof of loss after the end of the entire period of

12

disability. *Id.* at 374. Moreover, "we refuse[d] to interpolate by judicial fiat the term 'monthly' before 'period for which the Company is liable,' when the Pennsylvania General Assembly declined to follow this course." *Id.* For these reasons, we predicted that the highest court in Pennsylvania would adopt the majority approach and interpret the phrase "period for which the Company is liable" to mean a continuous period of disability. *Id.* at 375.

Despite the clear relevance of *Hofkin* and the weight of the majority view, Guardian contends that the New Jersey Supreme Court would narrowly construe the phrase "period for which we are liable" to refer to monthly periods of disability, and relies upon two primary grounds. First, Guardian argues that while *Hofkin* interprets Pennsylvania law, this case involves an application of New Jersey law. Second, while conceding that the statutory provisions underlying this case and *Hofkin* are nearly identical, Guardian contends that the wording of the policy language in this case is materially different from the wording of the policy language in *Hofkin*. We address both of these contentions below.

1.

Guardian contends that *Hofkin* is not relevant authority because this case requires an application of New Jersey law, while in *Hofkin* we were constrained by Pennsylvania law. Under Pennsylvania's rules of statutory construction, a court cannot resort to public policy considerations unless a determination has been made that the statutory language is ambiguous. *Hofkin*, 81 F.3d at 371. Guardian contends that New Jersey's rules of statutory construction permit consideration of public policy without the need of an ambiguity finding, and that we should construe the policy language in its favor in order "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, and to penalize dilatoriness and serve as a measure of repose." *Aponte-Correa v. Allstate Ins. Co.*, 744 A.2d 175, 178 (N.J. 2000) (internal quotation marks and citations omitted). For the reasons given below, we disagree that application of New Jersey's rules of statutory construction would

13

result in a different construction of the policy language.

Under New Jersey law, a court may consider public policy considerations "if there is ambiguity in the statutory language that leads to more than one plausible interpretation," or "if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." *DiProspero v. Penn*, 874 A.2d 1039, 1048-49 (N.J. 2005); *Aponte-Correa*, 744 A.2d at 178 ("Where a literal reading will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter."). Even if the statutory language is unambiguous, public policy may be considered if a literal interpretation would create a "manifestly absurd result." *Hubbard v. Reed*, 774 A.2d 495, 498 (N.J. 2001).

Guardian posits that Knoepfler's interpretation of the policy language would encourage claims to be brought long after evidence of a disability has been lost or destroyed and memories have faded. Illustrating this concern, Guardian argues that disability claims could be brought decades after the onset of a disability or even after an insured has already died, making verification of the claim virtually impossible. For these reasons, Guardian claims that Knoepfler's construction of the policy language would lead to an unreasonable result.

However, similar arguments have been rejected by other courts. In *Clark v. Massachusetts Mutual Life Insurance*, 749 F.2d 504, 507 (8th Cir. 1984), the Court of Appeals for the Eighth Circuit interpreted an analogous policy provision mandated by Arkansas law and found that the insurer's difficulties associated with investigating stale claims were contemplated by the policy itself. The Court of Appeals explained:

> Any theory that supplying of proof of loss was a condition precedent to liability under the policy tends to be dispelled by the following policy language: "written proof of loss must be given . . . within 90 days after . . . the period for which the company *is liable*." . . . Thus, the policy itself

14

contemplates that proof of loss may be submitted
after disability terminates; and at least to some
extent [the] difficulty the insurer may have in
investigating a disability that has already ended is
part and parcel of the insurance agreement.

*Clark*, 749 F.2d at 507 (emphasis in original).  Notwithstanding
the alleged difficulties of investigating a terminated disability,
the policy language makes manifest the Legislature's intent of
requiring proof of loss after the end of the disability.  Therefore,
this is not the kind of case where a plain reading of the language
would lead to a "manifestly absurd result."  *Hubbard*, 774 A.2d
at 498.[7]

Furthermore, the facts of this case do not present any of
the dramatic problems of proof which concern Guardian.
Knoepfler furnished proof of loss approximately two years and
ten months after the approximate date of the onset of his ongoing
disability.  Although Guardian has made vague assertions
regarding difficulties in investigating his claim, Guardian has not
identified any particular problems of proof and has not shown
any actual prejudice.  There is no claim that any evidence was
"buried or destroyed" or that "faded memories" made its
investigation futile.

Finally, we note that applying Guardian's construction of
the policy language leads to its own share of manifestly absurd
results.  For example, under Guardian's construction of the
language, the insured would be required "to file proof of loss
within 90 days of the end of *each* monthly period for which the
policies obligate [the insurer] to pay benefits and [,]. . .  the
limitations period would run independently for each monthly
installment."  *Panepinto v. New York Life Ins. Co.*, 688 N.E.2d
241, 243 (N.Y. 1997)  (emphasis in original).  It is difficult to

_____

[7]  As a practical matter, "'[a]n insured is not likely to wait
years before filing proof of loss because he will want to receive
benefits as soon as possible.'" *Panepinto v. New York Life Ins. Co.*,
688 N.E.2d 241, 244 (N.Y. 1997) (quoting *Laidlaw v. Commercial
Ins. Co. of Newark*, 255 N.W.2d 807, 812 (Minn. 1977)).

15

believe that the New Jersey Legislature would have intended that independent periods of limitations would run concurrently for the same disability, unless same was stated more plainly in the statutory provisions.

Based upon the foregoing, we conclude that a plain interpretation of the policy language would not lead to an absurd result, but one that is consistent with the approach taken by the vast majority of courts which have construed the policy language. Thus, there is no reason to believe that the New Jersey Supreme Court would depart from the majority view.

2.

Guardian also argues that the Policies in this case contain a temporal limitation which distinguishes this case from *Hofkin* and the other cases adopting the majority view. Guardian contends that it modified the statutory proof of loss provision by adding a sentence that refers to "liab[ility] for benefits at the end of each month," whereas the proof of loss provision in *Hofkin* contained no such reference. The language which Guardian added to the Proof of loss provision in the Personal Liability Policy is shown in italics below:

> *We are liable for benefits at the end of each month while you are disabled beyond the elimination period until the benefit period ends or, if earlier, the date you recover.*

You must give us proof of loss at our home office or at any agency office:

- for loss from disability within 90 days after the end of the period for which we are liable; and
- for any other loss within 90 days after the date of loss.

(App. at 97a.) (emphasis added). The additional language in the Overhead Expense Policy similarly reads:

16

*We are liable for benefits at the end of each month while you are disabled beyond the elimination period until the aggregate benefit is reached or, if earlier, the date you recover.*

You must give us proof of loss at our home office or at any agency office within 90 days after the end of the period of disability for which we are liable.

(App. at 129a.) (emphasis added). Seizing only upon the first part of each of the italicized sentences, Guardian argues that the length of the "period for which [the insurer is] liable" is defined by way of reference in the preceding sentence to "each month." Guardian contends that this language limits the "period for which [the insurer is] liable" to a monthly period. Guardian emphasizes that this modification to the statutory language was approved by the Commissioner of Insurance.

However, Guardian's construction of the policy language ignores the remainder of these sentences which reveals the full extent and entire period of Guardian's liability. Under the Personal Liability Policy, liability continues "until the benefit period ends or, if earlier, the date you recover." (App. at 97a.) Under the Overhead Expense Policy, liability extends "until the aggregate benefit is reached or, if earlier, the date you recover." (App. at 129a.)

Guardian is essentially arguing that because the Policies provide that benefits accrue "each month," we should construe the language "period for which [the insurer is] liable" as a monthly period. However, we rejected the same argument in *Hofkin*. 81 F.3d at 374. In *Hofkin*, we explained that "the policy language 'authorizing monthly benefits does not alter the specific wording of [the policy] that proof of loss must be filed only after the insurer's liability terminates.'" *Id.* (quoting *Wall v. Pennsylvania Life Ins. Co.*, 274 N.W.2d 208, 214 (N.D. 1979). We criticized the insurer's attempt to "impart[] questionable significance to various discrete references in the statute." 81 F.3d at 374.

Guardian's construction of the policy language imparts

17

questionable significance to the words "each month" even though they are located forty-five words away from, and in a different sentence than, the phrase "period for which we are liable." (A.R. at 129a.) ("We are liable for benefits at the end of each *month* while you are disabled beyond the elimination period until the aggregate benefit is reached or, if earlier, the date you recover. You must give us proof of loss at our home office or at any agency office within 90 days after the end of the *period* of disability for which we are liable.") (emphasis added). As in *Hofkin*, we decline to adopt such a strained reading of the policy language.

Furthermore, even assuming the language "each month" could be read as adding a temporal qualification to the "period for which we are liable," that modification cannot trump the rights, duties, and obligations specified in the statute. *See* N.J. Stat. Ann. § 17B:26-33 ("[w]hen any provision in a policy subject to this chapter is in conflict with any provision of this chapter, the rights, duties and obligations of the insurer, [and] the insured . . . shall be governed by the provisions of this chapter."). As construed by the majority of courts, the statutorily-mandated provisions in the Policies impose an obligation on the insured to furnish proof of loss within ninety days following the termination of the entire period of the insurer's liability, and the statute gives the insured the right to bring an action to recover disability benefits any time within three years thereafter. Guardian's modification to the statutory language cannot add to the insured's obligations or abridge his rights.[8]

As in *Hofkin*, we find that in order to adopt the insurer's construction of the policy language, we would have to judicially

---

[8] At a minimum, Guardian's modification creates an ambiguity which must be construed against the insurer. *Hofkin*, 81 F.3d at 369 (noting under an analogous Pennsylvania statute that "if the insurer chose to modify the required language, any modifications that are ambiguous should be construed in the insured's favor."); *Gibson v. Callaghan*, 730 A.2d 1278, 1282 (N.J. 1999) (stating generally that "ambiguities in an insurance policy are to be interpreted in favor of the insured . . .").

interpolate the word "monthly" before the language "the period for which [the insurer is] liable." *Hofkin*, 81 F.3d at 374. Under New Jersey law, however, "[w]e cannot write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment." *DiProspero*, 874 A.2d at 492 (internal citation and quotation marks omitted). Because the word "monthly" does not appear before the phrase "period for which [the insurer is] liable," we cannot adopt Guardian's construction of the policy language.[9]

For all of the foregoing reasons, we reject Guardian's construction of the policy language as requiring proof of loss after the end of each monthly period of disability. Instead, as in *Hofkin*, we adopt the majority's construction of the policy language as requiring proof of loss after the end of the entire period of continuous disability for which the insurer is liable.

IV.

Based upon the foregoing, we conclude that there is no reason to believe that the Supreme Court of New Jersey would depart from the majority view which construes the language "the end of the period for which [the insurer is] liable" to mean the end of the entire period of continuous disability for which the insurer is liable. Accordingly, we conclude that the District Court erred in granting summary judgment in favor of Guardian. We will therefore reverse the order of the district court granting

---

[9] Additionally, "read[ing] the statute in the way that is most consistent with the overall legislative intent," *McCann v. Clerk of City of Jersey City*, 771 A.2d 1123, 1128 (N.J. 2001) (internal citations and quotation marks omitted), does not support Guardian's construction of the statutory provisions. Guardian's construction would not be consistent with the legislative intent of making the insurance contract more readable and understandable. *See Daly v. Paul Revere Variable Annuity Ins. Co.,* 489 A.2d 1279, 1282 (N.J. Super. Ct. Law. Div. 1984) (stating that Title 17B represent the Legislature's desire to enact consumer oriented legislation aimed at making the insurance contract more readable and understandable to the purchaser).

summary judgment and remand for further proceedings consistent with this opinion.