NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0626n.06

No. 08-2198

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

**Sep 02, 2009**

LEONARD GREEN, Clerk

HARMOND H. SCHAEFER,

      **Plaintiff-Appellant**,

v.

AXA EQUITABLE LIFE INSURANCE
COMPANY, dba EQUITABLE and DISABILITY
MANAGEMENT SERVICES, INC.,

      **Defendants-Appellees.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN,
NORTHERN DIVISION

**O P I N I O N**

Before: KEITH, COLE, and WHITE, Circuit Judges.

**WHITE, CIRCUIT JUDGE**.  Plaintiff-Appellant, Harmond Schaefer, brought suit against his former employer, AXA Equitable Life Insurance Company ("Equitable") and the company that managed Equitable's disability insurance policies, Disability Management Services, Inc. ("DMS," and collectively, "defendants").  The district court granted defendants' motion for summary judgment on the ground that Schaefer's breach of contract claim was barred by a contractual provision requiring suit to be brought within three years.  We reverse in part and remand for further proceedings.

I.

Beginning in 1974, Harmond Schaefer worked for Equitable in Michigan as a licensed insurance agent. In 1976, 1979, 1987 and 1988, Schaefer purchased four long-term disability income

1

policies from Equitable.  Schaefer sold these policies to himself; they were not provided as a benefit

of his employment with Equitable.[1]

All four policies include language regarding the time period for bringing a legal action to

recover on the policy.  The 1976 and 1979 policies provide:

> LEGAL ACTIONS.  No action at law or in equity shall be brought to recover on this
> policy prior to the expiration of sixty days after written proof of loss has been
> furnished in accordance with the requirements of this policy.  No such action shall
> be brought after the expiration of three years after the time written proof of loss is
> required to be furnished.

The 1987 and 1988 policies have substantially the same provision, but worded slightly differently:

> LEGAL ACTION.  No legal action may be brought to recover on this policy within
> 60 days after written proof of loss has been given as required by this policy.  No such
> action may be brought after 3 years from the time written proof of loss is required to
> be given.

The 1976 and 1979 policies define proof of loss as follows:

> PROOF OF LOSS.  Written proof of loss must be furnished to the Equitable at its
> Home Office in case of claim for loss for which this policy provides any periodic
> payment contingent upon continuing loss, within ninety days after termination of the
> period for which the Equitable is liable and, in the case of claim for any other loss,
> within ninety days after the date of such loss.  Failure to furnish such proof within the
> time required shall not invalidate nor reduce any claim if it was not reasonably
> possible to give proof within such time, provided such proof is furnished as soon as
> reasonably possible and in no event, except in the absence of legal capacity, later than
> one year from the time proof is otherwise required.

---

[1]Schaefer was the issuing agent for his own policies, and signed each one as the agent and
as the proposed insured.  Although Schaefer's complaint asserted a claim under ERISA, Schaefer
no longer contends that these policies were related to his employment with Equitable.  The district
court dismissed Schaefer's ERISA claim, and Schaefer does not appeal that portion of the district
court's order.

No. 08-2198
*Schaefer v. AXA Equitable Life Ins. Co., et al.*

The 1987 and 1988 policies have a significantly shorter definition for proof of loss, which includes

the word "monthly" as a modifier for the "period for which [Equitable] is liable":

> PROOF OF LOSS. If the policy provides for periodic payment for a continuing loss, written proof of loss satisfactory to us must be given within 90 days of the end of each monthly period for which we are liable. For any other loss, such proof must be given within 90 days of that loss.

The 1976 and 1979 policies contained the following language regarding time for payment of claims:

> TIME OF PAYMENT OF CLAIMS. Benefits payable under this policy for any loss other than loss for which this policy provides any periodic payment will be paid immediately upon receipt of the written proof of such loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payment will be paid monthly during the continuance of the period for which the Equitable is liable and any balance remaining unpaid upon the termination of that liability will be paid at that time.

The 1987 and 1988 policies stated:

> TIME OF PAYMENT OF CLAIMS. After receiving written proof of loss, we will pay monthly all benefits then due you for disability. Any balance that remains unpaid when our liability ends will be paid at that time. Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

After suffering a heart attack in January 1995 that reduced his ability to work, Schaefer

applied for benefits under each of the four policies. Equitable approved Schaefer's claim, and began

to pay him monthly disability benefits. In 1995 and 1996, Schaefer raised two objections with

Equitable: (1) he contended that his "renewal commissions" should be considered deferred

compensation, and not be included in calculating his monthly income; and (2) each of Schaefer's

policies contained language regarding a cost of living adjustment (COLA), yet Schaefer did not

receive an adjustment for payments under the 1976 and 1979 policies. These two objections would

eventually form the basis for the instant lawsuit.

3

## A.     Renewal Commissions and Service Fees

In September 1995, Equitable sent a letter to Schaefer requesting verification of his monthly earnings, stating that his "monthly statements should include 1st year and renewal commissions received from all carriers and all expenses paid during the month." Schaefer responded with a fax, stating his belief that "renewal commissions are not considered earnings income; they are considered deferred compensation from prior year sales." On October 30, Equitable responded to Schaefer, explaining that "it is still our position that we must take into consideration the income earned for Renewal and services fees when calculating the Pre Disability Monthly Income as well as Current Monthly Income." Over the years, Schaefer continued to argue that his renewal commissions should be excluded from his current monthly and yearly income calculation, and Equitable responded with letters on September 9, 1996, September 10 and 16, 1997, August 16, 1999, and September 28, 2000, stating that it considered renewal commissions and service fees to be income. In January 2001, Disability Management Services (DMS) took over administration of Equitable's long-term disability policies, and on July 1, 2004, DMS addressed Schaefer's concern again, reiterating the answer that Equitable had provided numerous times before:

> Our review of your file reveals that this issue has been discussed and addressed with you since the inception of your file. We note that renewal commissions have always been included in both the calculation of your Prior Monthly figures and Current Monthly Income figures. If these earnings are included in your Prior Monthly Income then they need to be included in your Current Monthly Income. Renewal commissions have always been included in these calculations and are considered income for ongoing services that you render to your clients.

4

**B.     COLA payments**

On May 20, 1996, Schaefer complained to Equitable that he was only receiving COLA payments under the policies purchased in 1987 and 1988, and not the 1976 and 1979 policies as well. A June 19, 1996 letter from Equitable to Schaefer stated:

> The COLA riders for [the 1976 and 1979] Policies . . . are payable for total disability. However, the riders allow an index adjustment increased by ½ % of the prior monthly earnings for the residual benefits payable. Since you qualified for 100% residual benefits for current month you were not entitled to the adjustment.

On July 3, 2001, Schaefer wrote to DMS, again complaining that he had not been receiving cost of living benefits under the 1976 and 1979 policies. In its response, DMS stated that it needed to "determine this benefit from January 24, 1996 to the present." Two weeks later, in another letter, DMS stated that it was "in the process determining [sic] your Cost of Living Adjustment Benefit for each month from January 24, 1996 to the present. Once our review is complete, I will contact you." On September 17, 2001, DMS sent a third letter to Schaefer, stating that its "accountant completed the Cost of Living Adjustment Benefit monthly calculations from January 24, 1996 to August 24, 2001 under the [1976 and 1979] claims. Enclosed are two checks representing payment under the Cost of Living Adjustment Benefits." Schaefer contends that he received cost of living benefits on all four policies through most of 2003.

However, on April 1, 2004, DMS wrote to Schaefer again, and asserted that it had erred when it paid him COLA benefits under the 1976 and 1979 policies. It stated:

> Our records indicate you have only claimed a period of total disability for two months during your entire claim from January 24, 1995 through March 24, 1995. Given this information, you have not been continuously totally disabled for 12

months at any point during your claim and as a result, you are not entitled to receive an increase in your Monthly Income. . . .

As I advised you during our conversations, a review of benefits paid to you each month under [the 1976 and 1979 policies] since the onset of disability reveals that an error has occurred in the calculation of your residual disability [Cost of Living Factor]. As a result, a significant overpayment of $16,833.89 in residual disability benefits has been paid to you under these policies. . . . As we discussed, we are not seeking reimbursement for this overpayment but need to continue to adjust your current payable benefit accordingly.

On April 24, 2004, Schaefer responded, stating that he received the April 1 letter, and that it was "nothing but smoke and mirrors to try to get out of paying my Cost of Living Benefits." Schaefer argued that his residual disability status in 1995 counted towards the calculation of a 12-month period of disability required in the 1976 and 1979 policies' COLA riders.

On May 7, DMS responded to Schaefer's letter, asserting the same position it expressed in its April 1st letter. Schaefer continued to write letters to DMS disputing its interpretation of the COLA Riders to his 1976 and 1979 policies, and DMS maintained the position it articulated in its April 1, 2004 letter.

On November 22, 2006, Schaefer filed suit against Equitable and DMS in Michigan state court, alleging breach of contract, "conspiracy to wrongfully deny benefits in violation of unfair and deceptive trade practices statutes," promissory estoppel, and a violation of ERISA. The defendants removed the suit to the U.S. District Court for the Eastern District of Michigan, claiming federal jurisdiction due to the diversity of the parties[2] and the ERISA claim. The parties filed cross motions

---

[2]Schaefer is a Michigan resident, Equitable is a New York business entity with its principle place of business in New York, and DMS, a Connecticut corporation, has its principle place of business in Massachusetts.

for summary judgment, and on August 20, 2008, the district court granted defendants' motion, finding that Schaefer's claim for breach of contract was time barred, and dismissing the remaining claims. Schaefer filed a timely appeal to this court.[3]

## II.

This court reviews the district court's grant of summary judgment *de novo*. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must inform the district court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The nonmoving party must then "set forth specific facts showing there is a genuine issue for trial." *United States v. Ninety Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party." *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d

---

[3]On appeal, Schaefer only challenges the district court's order with regard to his breach of contract claim. Schaefer does not argue that his claims for promissory estoppel, conspiracy, and violation of ERISA were erroneously dismissed.

373, 377 (2008). A federal court exercising diversity jurisdiction applies the law of the forum state.

*Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302 (6th Cir. 2008).

III.

In their motion for summary judgment, defendants argued that Schaefer's claims were barred both by the contractual three-year time limit and by Michigan's six-year contract statute of limitations. The district court granted summary judgment to defendants, reasoning that the contractual three-year time limit is enforceable under Michigan law, that Schaefer's claims accrued well over three years before suit was filed, that a new breach of contract was not established each time Equitable allegedly miscalculated Schaefer's monthly benefits, and that there was no equitable tolling, estoppel or waiver. The district court did not address the application of Michigan's six-year statute of limitations to Schaefer's breach of contract claim. The court explained:

> Plaintiff filed his proof of loss in 1995. Moreover, the statements made in Plaintiff's 1995 and 1996 letters demonstrate that he was aware of the fact that Defendants disagreed with his interpretation of the policies. For instance, Plaintiff raised the classification of renewal commissions in his September 7, 1995 facsimile. Additionally, Plaintiff acknowledged the alleged miscalculation with respect to the determination of COLA benefits due under the 76 and 79 policies on May 20, 1996. These two pieces of correspondence indicate that Plaintiff was aware of these issues in 1995 and 1996, soon after the date of loss. In 2006, Plaintiff filed his complaint well outside of the three year period to commence legal action.
> The inquiry, thus, shifts to whether a basis exists, as Plaintiff suggests, to conclude the time restraints included in the policies are ineffective. Plaintiff contends that the limitation period begins to run when each payment is incorrectly calculated, analogizing the circumstance to an installment contact. Mich. Comp. Laws § 600.5836.[4] Alternatively, Plaintiff asserts that Defendants' representations

---

[4]Mich. Comp. Laws § 600.5836 states: "The claims on an installment contract accrue as each installment falls due."

equate to an express waiver, or should serve as a basis for applying the doctrine of equitable estoppel. Defendant, on the other hand, disputes both of these contentions.

\*\*\*

Defendants allegedly miscalculated the amount owed in 1995 and continued to pay the incorrect amount. Although Plaintiff maintains that each month Defendants recalculated the amount owed under the policies, the dispute focuses on the parties' interpretation of the policies — i.e. the classification of renewal commissions and COLA benefits under the 76 and 79 policies. The parties' positions did not change from month to month (at least during the three year limitation period), and payment under the plan arose from Plaintiff's single disability. Plaintiff's action for breach of contract accrued when Defendants advanced their interpretation of Plaintiff's benefits under the policies.

The district court applied the contractual time limit to Schaefer's claims as if it were a shorter version of the statute of limitations, without examining the plain language of the provision. The district court's consideration of when the cause of action accrued resembles the appropriate inquiry in applying a traditional statute of limitations defense. The district court did not discuss the specific contractual language stating that no legal action shall be brought after the *expiration of three years after the time written proof of loss is required to be furnished*. By their terms, the policies provide that the limitations period runs from the time proof of loss is required, and that such proof of loss is due "within ninety days after termination of the period for which the Equitable is liable," or, in the case of the 1987 and 1988 policy, "within 90 days of the end of each monthly period for which [Equitable is] liable."

## A.      Contractual three-year time limit for legal actions

The parties agree that state law controls this dispute, and in Michigan, "[w]hen interpreting insurance contracts, standard contract laws apply." *McDonald v. Farm Bureau Ins. Co.*, 747 N.W. 2d 811, 820 (Mich. 2008). In addition, "[t]he Michigan breach of contract statute of limitations is

six years. Mich. Comp. Laws § 600.5807(8). But, Michigan courts have held that insurance contracts may contain shorter statutes of limitations." *Santino v. Provident Life & Acc. Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001).

Schaefer's policies stated that "no legal action may be brought after 3 years from the time written proof of loss is required to be given." Schaefer's 1976 and 1979 claims required that "proof of loss" be furnished to Equitable "within ninety days after termination of the period for which the Equitable is liable." Schaefer's 1987 and 1988 policies required that proof of loss "be given within 90 days of the end of each *monthly* period for which we are liable." (Emphasis added.)

Relying on the contractual language of the 1976 and 1979 policies, Schaefer argues that the three-year time limit does not begin to run until his period of disability is over, interpreting the phrase "the period for which the Equitable is liable" to mean the entire period of disability. Schaefer points to a Third Circuit case, *Knoepfler v. Guardian Life Ins. Co. of Am.*, 438 F.3d 287 (3d Cir. 2006), for support. In *Knoepfler,* the Third Circuit confronted a similar set of facts: the plaintiff purchased two disability insurance policies containing a clause that stated: "[i]n no case can an action be brought against [the insurance company] more than three years after written proof must be furnished." *Knoepfler*, 428 F.3d at 288. The proof of loss clause stated that proof of loss was required "within 90 days after the end of the period for which we are liable." The Third Circuit construed the language "the end of the period for which [the insurer] is liable" to mean "the end of the entire period of continuous disability for which the insurer is liable." *Id*. at 297.

Importantly, the language in the 1976 and 1979 policies regarding proof of loss is similar to the language in *Knoepfler*, while the language in the 1987 and 1988 policies includes the word

10

"monthly." In *Knoepfler*, as well as in *Hofkin v. Provident Life & Accident Ins. Co.,* 81 F.3d 365 (3d Cir. 1996), the Third Circuit found this distinction important. In *Knoepfler*, the court discussed its ruling in *Hofkin*, which involved policy language identical to that in *Knoepfler* (and to Schaefer's 1976 and 1979 policies) stating:

> Applying a plain language analysis, we agreed with the majority view that the language "period for which the Company is liable" most plausibly refers to the entire period of continuous disability. [*Hofkin*] at 372-374. We reasoned that the proof of loss provision did not contain the word "monthly" before the phrase "period for which the Company is liable," and that the insurer's obligations with respect to payments on a "periodic" or "monthly" basis did not alter the language which required proof of loss after the end of the entire period of disability. *Id.* at 374. Morever, "we refused to interpolate by judicial fiat the term 'monthly' before 'period for which the company is liable.'" . . . For these reasons, we predicted that the highest court in Pennsylvania would adopt the majority approach and interpret the phrase "period for which the Company is liable" to mean a continuous period of disability. *Id*. at 375.

*Knoepfler* 438 F.3d at 293-94. *Hofkin* asserts that the "majority view" regarding a proof of loss provision such as the one involved here is to construe the time period to begin running after the period of disability concludes. *Hofkin* includes a discussion of cases interpreting identical or similar provisions and reaching the same result applying New York, Minnesota, North Dakota, Delaware, Kentucky, Idaho and Arkansas law. *Hofkin*, 81 F.3d at 372-74.

Defendants correctly point out, however, that the question before this court is how the Michigan Supreme Court would construe the provisions of Schaefer's policies. There is no Michigan Supreme Court case construing a similar time-limit clause. The Michigan Court of Appeals, however, addressed language similar to that in Schaefer's 1976 and 1979 policies in *Selesny v. U.S. Life Ins. Co.*, No. 236141, 2003 WL 1861028 (Mich. Ct. App., Apr. 8, 2003). The

clause at issue in *Selesny* stated that "[w]ritten proof of loss for benefits that are payable periodically must be given within 90 days after the termination of a period for which United States Life is liable. For all other losses, written proof of loss must be given within 90 days after the date of loss." *Selesny*, 2003 WL 1861028, at *4. Selesny argued that the "period for which United States Life is liable" was ambiguous, as it could be read to mean the entire period of disability, or to mean each monthly period during which the insured claimed benefits. The *Selesny* court read the proof of loss provision along with the "time for payment of claim" provision, which stated that "payment for losses that are paid periodically will be made each month subject to due written proof of loss." The Michigan Court of Appeals found that the policy was not ambiguous, holding that "the provisions, read together, make clear that an insured must submit a proof of loss within ninety days after a monthly period for which U.S. Life is liable." *Id.* at *5.

In *Young v. Northwestern*, No. 201295, 1998 WL 1992774 (Mich. Ct. App., May 8, 1998), the Michigan Court of Appeals also held that the subject proof-of-loss policy language was not ambiguous.[5] In *Young*, the court stated "the plain language of the policy is not ambiguous, and we will not create an ambiguity where none exists. Morever, if this Court were to accept plaintiff's unreasonable assertion that the company's period of liability is synonymous with 'the end of the policy,' there would be virtually no time limitation on seeking retroactive benefits." *Id*. at *1.

---

[5]The proof of disability policy in *Young* stated: "Written proof of disability must be given to the company at its home office. It must be given within ninety days after termination of the period for which the company is liable." *Young*, 1998 WL 1992774, at *1.

Finally, in *Korn v. Paul Revere Life Ins. Co.*, 238 F. App'x 109, 111 (6th Cir. 2007), a panel of this court referred to the insured's theory "that because his disability is continuing, the benefits period has not ended, so he is not yet required to submit any proof of loss" as "plainly absurd." The court cited *Selesny*, and stated:

> [I]n order to obtain benefits under the contract, Mr. Korn must submit proof of loss within 90 days of the end of any period (e.g., month) for which he is claiming benefits. Thus, for limitations period purposes, the claim accrues and the three-year period begins to run 90 days after the end of that benefit period.

*Id*.

Thus, there is little reason to believe that the Michigan Supreme Court would follow *Hofkin* and similar cases and construe the time-limit clause of the 1976 and 1979 policies to mean that the three-year time limit begins running after the conclusion of the insured's disability. Rather, the construction advanced by the Michigan Court of Appeals in *Selesny* — that the time period is a monthly time period, and that this provision is not ambiguous — seems most in line with Michigan law. Thus, to the extent Schaefer argues that the time-limit provision does not apply because no claim accrues under the policy until after the termination of Equitable's liability under the policy, the district court correctly denied this argument.

However, the district court's conclusion that Schaefer's entire claim is barred by the contract's time-limit provision is erroneous. Schaefer argues that if this court finds that the time limit is enforceable, he is still entitled to maintain an action to recover benefits claimed to be due within the three years prior to the filing of his lawsuit. Another Michigan Court of Appeals decision, *Monti v. League Life Ins. Co.*, 391 N.W. 2d 490 (Mich. Ct. App. 1986), involved a breach of contract

13

action by an insured seeking disability payments under a contract containing a three-year time limit similar to the provision in Schaefer's policies. Although the plaintiff had failed to file suit within three years from the date of his disability, the Michigan Court of Appeals stated:

> The plaintiff's claim would be time barred by the applicable statute of the contract but for the nature of plaintiff's claim. Plaintiff is claiming disability benefits based on his permanent and continuing total disability. His disability is ongoing. It is not a discrete loss. In that sense, he is seeking to collect on a present injury and not a stale claim. . . . Here, plaintiff's claim is timely . . . since notice of claim for a present disability was made within 210 days of that present disability. He would be entitled to benefits from the date of his filing notice for the length of his disability.

*Id*. at 494-495.

Similarly, in *Korn*, *supra*, a case that involved a lawsuit filed in February 2004 regarding a contract containing a time-limit provision similar to the one at issue here, this court said, "for limitations period purposes, the claim accrues and the three-year period begins to run 90 days after the end of that benefit period. Ergo, the three-year limitations period bars a claim for benefits for any month prior to November 2000." *Korn*, 238 F. App'x at 111.

Schaefer was required to file suit within three years of the time proof of loss was required, and proof of loss was required within ninety days after the end of the monthly period for which he was claiming benefits. Schaefer filed suit in November 2006; thus, the contract's three-year time limit bars him from recovering benefits for any month prior to August 2003, but does not preclude him from recovering benefits falling on or after that period.

### B.    Statute of Limitations

As stated above, the district court did not expressly reach whether Michigan's six-year statute of limitations bars Schaefer's breach of contract claim. While the district court did not specifically

14

address the statute of limitations, it found that Schaefer's claim had "accrued" in 1995 and 1996, using an analysis that mirrors the analysis of whether a claim is barred by the statute of limitations.

Michigan has a six-year statute of limitations for breach of contract actions. Mich. Comp. Laws § 600.587(8). In Michigan, a breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827.

In the instant case, the district court found that Schaefer's "action for breach of contract accrued when Defendants advanced their interpretation of Plaintiff's benefits under the policies." The district court also found that defendants communicated their interpretation of the policies to Schaefer in 1995 and 1996, pointing to Schaefer's September 7, 1995 facsimile raising the classification of renewal commissions, and his May 20, 1996 letter acknowledging that his payments under the 1976 and 1979 policies did not include COLA benefits.

The district court did not, however, address the Michigan decision of *Monti, supra*, or the effect of the policy language on the accrual-based analysis. The court's decision in this regard appears to conflict with *Monti,* and Equitable's effort to distinguish *Monti* on the basis that Monti's underlying claims had not yet been considered by the defendant insurance company is not persuasive. In support of their argument that the statute of limitations should bar Schaefer's suit, defendants rely on two cases from other circuits: *Lang v. Continental Assurance Co.*, 54 F. App'x 72 (3rd Cir. 2002), and *Dinerstein v. Paul Revere Life Ins. Co.*, 173 F.3d 826 (11th Cir. 1999). Both *Lang* and *Dinerstein* involved payment of individual disability policies, and the court in each case found that despite the periodic nature of payments, a new cause of action did not arise "each time the insurer

15

allegedly refused coverage in bad faith." *Lang*, 54 F. App'x at 74. However*, Lang* and *Dinerstein* depart from the generally accepted rule that individual disability policies are payable monthly, and accordingly, that the right to payment accrues monthly. *Everhart v. State Life Ins. Co.*, 154 F.2d 347, 356 (6th Cir. 1946), *Pierce v. Metropolitan Life Ins. Co*., 307 F. Supp. 2d 325 (D.N.H. 2004). The Michigan cases are to the contrary.

Equitable also relies on *Young*, *Selesny*, and *Korn, supra.* As discussed earlier, in *Young,* the Michigan Court of Appeals rejected the argument that the contractual time limit at issue postpones accrual until after the insurer's liability terminates, and held that the payments accrued after the applicable monthly periods. *Young,* 1998 WL 1992774 at *2. *Young* did not, however, hold that all payments under the policy accrue at the time of disability. *Id*. In fact, the insurer in *Young* had made the payments that became due after a proof of loss was belatedly filed. *Id*. at *1. The *Selesny* court rejected a similar claim, and, like the *Korn* panel, recognized that benefits could be recovered for periods after a proof of loss was properly submitted. *Selesny*, 2003 WL 1861028 at *5; *Korn,* 238 F. App'x at 111.

A more recent Michigan Court of Appeals case dealing with a claim by pensioners against the City of Detroit for breach of contract in deducting health-insurance premiums from pension-benefit payments is consistent with *Monti*. In *Adams v. City of Detroit*, 591 N.W.2d 67 (Mich. Ct. App. 1998), the Michigan Court of Appeals reversed the trial court's decision that the plaintiffs' claims were entirely barred by the statute of limitations and, accepting the argument that pension benefit payments are like installment contract obligations, allowed plaintiffs to proceed as to all benefits withheld within the six-year statute of limitations.

IV.

Accordingly, we reverse the decision of the district court. The district court correctly found that the contractual three-year time limit was enforceable against Schaefer, but incorrectly found this provision to bar his entire claim. Schaefer may proceed against Equitable, but only for benefits allegedly owed for monthly periods beginning in August 2003.