Gannon GRAY

v.

## UNITED OF OMAHA LIFE INSURANCE CO.

Case No. CV 16–7383 MWF (JCx)

United States District Court, C.D. California.

Signed 05/01/2017

Russell G. Petti, Law Offices of Russell G. Petti, La Canada, for Gannon Gray.

Martin E. Rosen, Misty A. Murray, Hinshaw and Culbertson LLP, Los Angeles, CA, for United of Omaha Life Insurance Co.

Proceedings (In Chambers): ORDER RE MOTION TO DISMISS [22]

The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Before the Court is Defendant United of Omaha Life Insurance Company's ("United") Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion"), filed January 23, 2017. (Docket No. 22). Plaintiff Gannon Gray filed his Opposition on February 8, 2017. (Docket No. 26). United replied on February 22, 2017. (Docket No. 27). The Court has read and considered the papers filed on the Motion and held a hearing on **March 13, 2017.**

For the reasons set forth below, the Motion is **DENIED.** The Court agrees with Plaintiff that binding authority in this jurisdiction does not require that, under the language of the model statute enacted in California, a claim for disability benefits accrues at the onset of the disability. The Court further agrees with the majority of courts outside this jurisdiction, which interpret the model language to require that a claim for disability benefits accrues at the termination of a period of covered disability.

## I. BACKGROUND

The First Amended Complaint alleges the following facts, which the Court takes as true and construes in the light most favorable to Plaintiff. *See, e.g., Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff.") (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).

Plaintiff was an employee of southern California television station KSCI–TV ("KSCI") for 15 years, eventually becoming Vice President of Sales. (FAC ¶ 11). In May 2011, Plaintiff was severely injured in a car accident. (*Id.* ¶ 13). As a result of the accident, Plaintiff has only limited use of his right and left legs, left arm, and shoulder. (*Id.*). He uses a wheelchair to travel more than a short distance, has limited lifting capabilities, and suffers from chronic pain in his back, shoulder, and left leg. (*Id.*). Since the accident, Plaintiff has had five corrective surgeries in addition to a number of other procedures, none of which has resolved his symptoms. (*Id.*).

Plaintiff remained bedridden for two months following the accident. (FAC ¶ 14). However, in August 2011, KSCI threatened to fire Plaintiff if he did not return to work. (*Id.*). Plaintiff attempted to work part-time, but was prevented by his medical condition from working effectively. (*Id.*). In November 2011, Plaintiff left his employment at KSCI again to undergo further surgeries. (*Id.* ¶ 15). In April 2012, KSCI terminated Plaintiff. (*Id.* ¶ 16).

KSCI provided its employees with a welfare benefit plan, governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*, that included a long term disability plan (the "Plan"). (FAC ¶¶ 3–5). United issued the group policy of insurance (the "Group Policy") that funded the Plan's benefits. (*Id.* ¶ 5). Plaintiff alleges that KSCI never informed him that he was covered under the Plan, and because he never received an exit interview upon termination, Plaintiff left KSCI without knowledge of his coverage. (*Id.* ¶ 17).

The First Amended Complaint refers frequently to the Group Policy. Per United's unopposed request, the Court takes judicial notice of the Group Policy (Declaration of Bobbi Burns–Bierwirth ("Burns Decl.") ¶ 2, Ex. A (Docket No. 22–2)) under the incorporation by reference doctrine. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (repeating rule that courts may "consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them"); *Scharff v. Raytheon Co. Short Term Disability Plan*, No. EDCV07-134PSG(OPX), 2007 WL 2947566, at *4 (C.D. Cal. June 22, 2007), *aff'd*, 581 F.3d 899 (9th Cir. 2009) (applying incorporation by reference doctrine to plan documents governed by ERISA). For the same reasons, the Court takes judicial notice of the Certificate of Insurance, titled "Your Group Long–Term Disability Benefits." (Burns Decl. ¶ 2, Ex. B).

In January 2013, a former coworker finally told Plaintiff that he had long term disability coverage through KSCI and that United was the insurer. (FAC ¶ 18). When Plaintiff called KSCI's Personnel Director to obtain a copy of the Policy, however, the Personnel Director informed Plaintiff that she had been instructed not to speak with him, and referred him to KSCI's lawyers. (*Id.*). When Plaintiff contacted the lawyers, they too failed to pass on a copy of the Policy. (*Id.*).

In addition to asking for a copy of the Policy from KSCI, starting in January 2013 Plaintiff contacted United to inquire about filing a disability claim. (FAC ¶ 19). Plaintiff alleges that United informed him that he could not file a claim without a Group Policy number. (*Id.*). In fact, the Group Policy states that a claimant may submit a claim simply by sending in a written statement detailing the disability, job duties, and any medical treatment received. (*See* Burns Decl., Ex. B at 43). KSCI refused even to share the Group Policy number with Plaintiff. (*Id.*). The FAC contends that Plaintiff gave United

sufficient information that it could have verified he was covered under KSCI's Group Policy but, like KSCI, United "stonewalled" him instead. (*Id.* ¶ 20). The FAC does not supply details regarding Plaintiff's attempts to prove his membership in KSCI's Group Policy with United, or what actions United took that amounted to stonewalling.

In May 2013, Plaintiff sued KSCI for retaliation and wrongful discharge. During the litigation, Plaintiff sought to discover the Group Policy, but KSCI refused to produce it. (FAC ¶ 22). Finally, in about July 2015, Plaintiff's counsel succeeded in obtaining the Group Policy number. (*Id.*). Accordingly, on August 18, 2015, Plaintiff filed a claim for long term disability benefits with United. (*Id.* ¶ 23).

United responded with a request for certain documents to process the claim. (FAC ¶ 24–25). Plaintiff was unable to produce all of the requested information. (*Id.* ¶ 26). On January 4, 2015, United denied Plaintiff's claim. (*Id.*).

Six months later, on June 27, 2016, Plaintiff appealed United's denial of his claim. (FAC ¶ 28). On September 23, 2016, United issued a final denial of Plaintiff's claim. (*Id.* ¶ 40). United explained that Plaintiff's claim was denied because he had failed to provide all of the requested documents and because Plaintiff's claim was not timely filed. (*Id.*). United explained that because it had denied Plaintiff's claim on eligibility ground, United did not complete "a full investigation into whether ... [Plaintiff] met all other policy provisions, including" whether Plaintiff was disabled, as defined by the Group Policy. (*Id.*).

Plaintiff's counsel received United's letter on September 30, 2016, and filed suit against United in this Court the following Monday, October 3, 2016. (FAC ¶ 45). The First Amended Complaint effectively alleges a single claim against United for denial of Plan benefits under ERISA (presumably under 29 U.S.C. § 1132(a)(1)(B), which permits a claimant to bring a civil action "to recover benefits due ... under the terms of [the] plan"). Plaintiff's Claim Two, for restitution of past benefits owed and an injunction requiring continued payment of benefits for the period of Plaintiff's disability, and Claim Three, for declaratory relief, are remedies and not independent claims. *See, e.g., Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014) (explaining that "the Declaratory Judgment Act only creates new remedies" for existing federal rights); William W. Schwarzer et al., *Federal Civil Procedure Before Trial*, § 10:3.1 (The Rutter Group 2005) ("Declaratory relief is a **procedural device** for granting a remedy. It does not create any substantive rights or causes of action.") (emphasis in original).

United now moves for dismissal pursuant to the contractual limitations period in the Plan.

## II. DISCUSSION

### A. Legal Standard

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting

*Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id.* at 681, 129 S.Ct. 1937 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the Complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). Where the facts as pleaded in the Complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

## B. Statutory Limitations Period

United contends that Plaintiff's claim should be dismissed as untimely filed.

█ "There are two parts to the determination of whether a claimant's ERISA action is timely filed: [a court] must determine first whether the action is barred by the applicable statute of limitations, and second whether the action is contractually barred by the limitations provision in the policy." *Withrow v. Halsey*, 655 F.3d 1032, 1035 (9th Cir. 2011).

█ No specific federal statute of limitations governs claims for benefits under an ERISA plan. Accordingly, Courts look to the most analogous statute of limitations in the state where the claim for benefits arose arose to determine whether the claim was filed timely. *See Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 646–47 (9th Cir. 2000). In *Wetzel*, the Ninth Circuit determined that "California Code of Civil Procedure Section 337[ ] provides the applicable statute of limitations for an ERISA cause of action based on a claim for benefits under a written contractual policy in California." *Id.* at 648. Section 337 sets a four-year statute of limitations for actions based on written contracts. Cal. Code Civ. Proc. § 337.

█ Under this limitations period, Plaintiff's claim is timely. United denied Plaintiff's appeal on September 23, 2016; Plaintiff filed his Complaint only ten days later, on October 3, 2016. *See, e.g., Barnett v. S. California Edison Co. Long Term Disability Plan*, No. 1:12-CV-00130-LJO, 2013 WL 2190160, at *5 (E.D. Cal. May 20, 2013) (concluding that plaintiff's complaint, filed almost two years after his appeal was denied, was timely).

## C. Contractual Limitations Period

### 1. Legal Framework

■ As to the permissibility of contractual limitations in a general sense, the Supreme Court has held that

in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

*Order of United Commercial Travelers of America v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947). Parties to a contract may also agree to change when a limitations period begins. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, — U.S. —, 134 S.Ct. 604, 611, 187 L.Ed.2d 529 (2013) ("The *Wolfe* rule necessarily allows parties to agree not only to the length of a limitations period but also to its commencement.").

In *Heimeshoff*, the Supreme Court explained that "[t]he principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan" because the written documents of the plan are "the linchpin" of the system. *Id.* at 611–12. Therefore, the limitations period agreed to by the parties "should be enforced unless the limitations period is unreasonably short or foreclosed by ERISA." *Id.* at 616. The contract at issue in *Heimeshoff* provided for a three-year statute of limitations and set the date for accrual of the statute of limitations when proof of loss was due. *Id.* at 608. The Supreme Court determined that the limitations period and accrual time provided for in the plan were reasonable, even though under its terms the statute of limitations necessarily began to run before the internal administrative process was completed. *Id.*

at 612–13. The Court further determined that ERISA regulations generally do not require tolling of the limitations period during internal review. *Id.* at 616.

■ Therefore, under *Heimeshoff*, the Court "must give effect to the Plan's limitations provision unless [the Court] determine[s] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect." *Id.* at 612.

The Group Policy at issue in this action contains the following contractual limitations provision: "No legal action can be brought until at least 60 days after [United has] been given written proof of loss. No legal action can be brought more than two years after the date written proof of loss is required." (Burns Decl., Ex. B at 48). Both parties agree that California Insurance Code section 10350.11 must be read into the contract to extend the limitations term to three years after the date written proof of loss is required.

The Group Policy provides that written proof of loss is required "within 90 days after the end of [the claimant's] Elimination Period; or as soon as reasonably possible. If it is not possible to give [United] proof within 90 days, it must be given to [United] no later than one year after the time proof is otherwise required . . . ." (*Id.* at 43). Finally, the Elimination Period is defined as a waiting period of 90 calendar days from the day disability commences. (*Id.* at 29). Reading these provisions together, it appears that the Group Policy provides for, at most, a four year and 180 day limitations period *starting the day the disability commenced.* That is, from the day disability commences, a claimant must wait out the 90 day Elimination Period; at the end of that period, the claimant has up to one year and 90 days, at most, to file written proof of loss. To be timely, a

claim must be filed no more than three years after the written proof of loss was due. The contractual limitations provision in *Heimshoff* operated in essentially the same manner. *Id.* at 610.

In California, however, insurance contracts are required by statute to include certain clauses. For example, insurance contracts like the one at issue here are required by the California Insurance Code to include the following provision:

> Legal Actions: No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

*Id.* at § 10350.11. And indeed, the Group Plan includes this language. (Burns Decl., Ex. B at 48).

Similarly, insurance contracts like the one at issue in this action are required to include the following language, defining when written proof of loss is required:

> Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment continent upon continuing loss within *90 days after the termination of the period for which the insurer is liable* and in case of claim for any other loss within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity,

later than one year from the time proof is otherwise required.

Cal. Ins. Code § 10350.7 (emphasis added).

Elsewhere, the code states that "each disability policy delivered or issued for delivery to any person in this State shall contain" the above provisions, among others,

> in the words in which the same appear ...; provided, however, that the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording ... *which are in each instance not less favorable in any respect* to the insured or the beneficiary.

Cal. Ins. Code § 10350 (emphasis added).

As set out above, the provision in the Group Policy defining when written proof of loss is required differs from the proscribed statutory language. If the Group Policy's terms are less favorable to Plaintiff than the statutory language, however, the statute explicitly states that it will override the terms of the Group Policy. In that case, "a 'controlling statute' will prevent the limitations period from taking effect," as provided in *Heimeshoff*, 134 S.Ct. at 612.

The parties disagree on how to interpret the above statutory language. Plaintiff would interpret the language such that written proof of loss is due much earlier under the contract, making the contractual limitations period less favorable to Plaintiff than the statute. United contends that the contractual language is the same, if not more protective. Accordingly, the Court first must determine when written proof of loss is required under the statute. Only then can the Court decide whether the statutorily required terms are more favorable to Plaintiff than the terms of the Group Policy. If the statute is more favorable, it controls, and the Court must enforce it according to its plain meaning.

### 2. Interpreting Section 10350.7

Plaintiff suggests that under section 10350.7, proof of loss is not due until the **termination** of the period for which the employer owes benefits. That is, section 10350.7 would permit a claimant to submit proof of loss at any time until the claimant is either (a) no longer disabled or (b) no longer eligible for long term disability insurance under the relevant plan. The language of section 10350.7 is drawn from a model statute, and Plaintiff's reading is consistent with the majority of courts to have interpreted the model language in jurisdictions across the country. *See, e.g., Hofkin v. Provident Life & Acc. Ins. Co.,* 81 F.3d 365, 372 (3d Cir. 1996) (surveying decisions across jurisdictions and concluding that "[a] substantial majority of those courts have . . . [held] that the most plausible reading of 'period for which the Company is liable' requires that this phrase be interpreted to encompass the entire length of an ongoing period of disability."); *Knoepfler v. Guardian Life Ins. Co. of Am.,* 438 F.3d 287, 294–95 (3d Cir. 2006) (referring to the *Hofkin* approach as the "majority view"); *Harris v. Prudential Ins. Co. of Am.,* 93 Fed.Appx. 139, 142–43 (9th Cir. 2004) (Reinhardt, J., dissenting) (referring to the *Hofkin* approach as "the rule adopted by virtually every state to have considered the question").

■ In *Hofkin*, the Third Circuit held, in line with the majority approach, that the phrase "period for which the [insurer] is liable" must be "interpreted to encompass the entire length of an ongoing period of disability." *Id.* That is, written proof of loss is not due until the claimant's disability has ceased. The court agreed with the Supreme Court of Minnesota, which concluded that this interpretation "was 'the most natural interpretation of the phrase,'" and held that 'the period for which [the insurer] is liable' refers to the total contin-uous period of disability, be it short or long, and not individual four-week periods.'" *Id.* at 373 (quoting *Laidlaw v. Commercial Insurance Co. of Newark,* 255 N.W.2d 807, 811 (Minn. 1977)). Accordingly, when a claim alleging long term and continuing disability is presented, "the question becomes whether a genuine issue of material fact exists as to the existence and continuity of [the claimant's] total disability." *Id.* (quoting *Ryan v. ITT Life Ins. Corp.,* 450 N.W.2d 126, 129 (Minn. 1990)). In the view of the *Hofkin* court, and in the view of the majority of courts that it discusses, the contrary interpretation—that the phrase "period for which the insurer is liable" refers to the first, 90 day period for which benefits may be owed—is far more strained. *Id.*

At the hearing, United implied that the approach in *Hofkin,* decided in 1996, was outdated. To the contrary, the Third Circuit reaffirmed *Hofkin* in 2006 in *Knoepfler,* 438 F.3d at 294, and district courts continue to apply *Hofkin's* holding. *See, e.g., Leporace v. N.Y. Life & Annuity,* No. CIV.A. 11-2000, 2011 WL 6739446, at *9 (E.D. Pa. Dec. 21, 2011), *aff'd,* 619 Fed. Appx. 172 (3d Cir. 2015) (distinguishing *Hofkin* as inapplicable to actions filed outside of the state statute of limitations, but affirming that it applies in actions filed within the statutory limitations period). Moreover, the continued viability of the same Minnesota Supreme Court case relied upon in *Hofkin—Laidlaw,* 255 N.W.2d at 811—was recently reaffirmed in the Eighth Circuit. *See Matthew v. Unum Life Ins. Co. of Am.,* 639 F.3d 857, 867–68 (8th Cir. 2011) (holding that contractual statute of limitations never began to run because the disability had not yet terminated). The *Hofkin* approach is still good law.

California courts, however, have yet to weigh in on the debate. United suggests that, read together, certain decisions by

the California Supreme Court and the Ninth Circuit hint that California would diverge from the majority approach.

In *Dillon v. Board of Pension Comm'rs*, 18 Cal.2d 427, 116 P.2d 37 (1941), the California Supreme Court held that a claimant failed to file a claim for pension benefits within the statutory period. In coming to that conclusion, the court distinguished between an action to determine the *existence* of a right to benefits, and an action to recover *installments* that have become due, after the right has been established. *Id.* at 430, 116 P.2d 37; *accord Baillargeon v. Dept. of Water and Power*, 69 Cal.App.3d 670, 138 Cal.Rptr. 338 (1977). In *Dillon*, the claimant's right to a pension accrued at the time of her husband's death. *Id.* at 431, 116 P.2d 37. The case thus does not speak directly to the case at hand; in *Dillon*, when the right accrued was not at issue because the event giving rise to a right to benefits was acute, rather than chronic. Nevertheless, the decision gives this Court some guidance as to how California courts would view the accrual date of a claim for benefits.

For a time, the Ninth Circuit explicitly declined to follow the majority approach outlined above. In *Nikaido v. Centennial Life Ins. Co.*, 42 F.3d 557 (9th Cir. 1994), the Ninth Circuit "interpreted the language 'period *for which the company is liable*' to refer to *each month* of disability." *Cisneros v. UNUM Life Ins. Co. of Am.*, 134 F.3d 939, 943–44 (9th Cir. 1998) (discussing the *Nikaido* decision) (emphasis in original). The *Nikaido* court reasoned that because proof of loss was thus due after each month of continuing disability, "a new cause of action with a new three-year statute of limitations period also began each month." *Id.* at 944. Effectively, if a claimant were to wait ten years from the date that he or she became disabled to file a proof of claim with the plan, any claim less than three years old would still be viable and within the limitations period.

In *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 650–51 (9th Cir. 2000) (en banc), the Ninth Circuit expressly overruled *Nikaido*. Primarily, the court concluded that section 10350.7 was not a statute of limitations at all, but merely a statutory requirement that certain contractual provisions be included in contracts for disability insurance. *Id.* at 648. The court also explicitly overruled *Nikaido*'s "rolling accrual" approach. *Id.* at 649 ("Nikaido is overruled in its entirety, and its 'rolling' accrual rule is no longer the law of this circuit.").

Having overruled the rolling accrual approach, however, the Ninth Circuit declined to decide what approach should replace it. Instead, the court remanded to the district court for determination of the issue in the first instance. Although the Ninth Circuit was almost certainly aware of the *Hofkin* approach—the three-judge *Wetzel* panel discussed the case in an extended footnote, *see Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 189 F.3d 1160, 1171 n.19 (9th Cir. 1999) — the en banc court declined to discuss that line of cases at all. Instead, the *Wetzel* court focused on the only marginally relevant California decision on the subject: *Dillon*. The en banc court explained that "[i]n determining whether Wetzel complied with these policy provisions [including section 10350.7], it is necessary first to distinguish between the denial of a basic entitlement to benefits on the one hand, and the denial of an entitlement to recover a particular periodic installment on the other." *Wetzel*, 222 F.3d at 650. The Ninth Circuit left it to the district court to decide how *Dillon* would affect the section 10350.7 analysis. *Id.* at 650.

1326

United contends that this language indicates that, in the Ninth Circuit's view, *Dillon* requires the district court to interpret the "period for which the [insurer] is liable" to mean the *first* 90-day period in which benefits would be owed, for purposes of establishing the right to benefits.

The district court in *Wetzel* disagreed. *See Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, No. CV-97 3461 LGB AJWX, 2001 WL 36961605 (C.D. Cal. Feb. 2, 2001). The underlying claim in *Wetzel* related to an insurer's termination of the claimant's long-term disability benefits. On remand, the court determined that the action was one for establishing the right to benefits, rather than one contesting an entitlement to recover a particular periodic installment. But the court concluded that *Dillon* had little to offer the section 10350.7 analysis beyond that threshold determination:

> Beyond this inquiry, the court finds the facts and analysis of *Dillon* to be entirely inapposite. *Dillon* did not involve a contractual limitations period that was triggered at the termination of the period for which the defendant was liable. In the absence of such a contractual provision, the focus of any inquiry into limitations periods would be the commencement, as opposed to the end, of the period for which a defendant is liable. This is borne out by the *Dillon* case itself, where the limitations period was deemed to have commenced on the date defendant's liability for pension payments commenced —*i.e.* the date of the death of plaintiff's husband. As such, the case provides no insight into how the instant limitations provision should be interpreted.

*Id.* at *8.

The insurer urged the court to date the accrual of the limitations period to the date when it terminated the plaintiff's benefits. *Id.* at *6. The plaintiff responded that,

rather, the limitations period should not accrue until the date that his disability actually terminated. *Id.* The district court agreed with the plaintiff.

In so holding, the court noted "[t]he dearth of case authority in this Circuit" on the issue. *Id.* at *8. But, the court decided, the lack of authority in this Circuit was "counteracted by case authority from other Circuits treating Plaintiff's as the most natural interpretation." *Id.* After considering both the Ninth Circuit's decision in *Wetzel* and the California Supreme Court's decision in *Dillon*, the district court nevertheless concluded—as Plaintiff urges this Court to conclude—that the majority approach, holding that the limitations period accrues at the time disability terminates, was correct. This Court agrees.

In its briefing, United points to a few scattered district court decisions in the Central District since *Wetzel* that it claims show that the Circuit rejects the majority view. *See, e.g., Bonin v. Provident Life & Accident Ins. Co.*, No. 14-CV-00614-SI, 2015 WL 1967260, at *4 (N.D. Cal. May 1, 2015); *Wright v. Paul Revere Life Ins. Co.*, 291 F.Supp.2d 1104, 1115 (C.D. Cal. 2003). But none discusses the extensive out-of-circuit authority on the issue, or even considers that the contractual language might conflict with section 10350.7. Most simply apply the contractual language of the relevant policy as written. These decisions are not binding on this Court, and the Court does not find them persuasive.

At the hearing, United urged the Court to consider the public policy implications of the majority approach, arguing that opening the door to "perpetual liability," especially in the ERISA context, is contrary to public policy. (*See also* Reply at 10 (citing *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1034 (9th Cir. 2006))). United raises the specter of Jane Doe, a hypothetical claimant whose disability policy provides

lifetime benefits, so long as she remains disabled. United contends that under the majority approach, if Jane becomes disabled at the age of 40 and remains disabled until the day she dies at 82, her estate may file a claim to recover benefits for more than 45 years after her claim could have been submitted. (Reply at 10). At the hearing, counsel for United added that such an extended limitations period creates extreme evidentiary problems for adjudicating claims.

In *Knoepfler*, the Third Circuit rejected similar arguments. *See* 438 F.3d at 294–95. First, the court noted, the intent of the legislature overrides these concerns. "Notwithstanding the alleged difficulties of investigating a terminated disability, the policy language makes manifest the Legislature's intent of requiring proof of loss after the end of the disability." *Id.* at 295. Second, the facts of that case belied the evidentiary concerns raised by the defendants. There, as here, there was "no claim that any evidence was 'buried or destroyed' or that 'faded memories' made ... investigation futile." *Id.*

Indeed, despite the hypothetical negative policy implications of the majority approach, there appear to be few, if any, cases in which a claimant has delayed so long in filing an administrative claim as to make the limitations period absurd. Most claimants would likely prefer to obtain their benefits as soon as possible. There is little incentive to delay purposely in bringing a claim. Moreover, as counsel for Plaintiff pointed out at the hearing, equitable doctrines, such as the doctrine of laches, may relieve the defendant of liability in an extreme case. United does not contend that any such equitable doctrine should preclude Plaintiff's claim in this action, however, and Plaintiff appears from the pleadings to have pursued his claim diligently despite his former employer's attempts to block his recovery.

In sum, the Court agrees with the majority approach as laid out in *Hofkin* and other cases. The phrase "period for which the insurer is liable" in section 10350.7 refers to the entire period of disability, and proof of loss is not required until that period ends. Accordingly, the Court must also conclude that the Group Policy's language, requiring proof of loss within a year and 180 days from the date of the disability's onset, is less protective than the language of section 10350.7. This provision of the Group Policy thus violates section 10350, and the Court reads the statutory language into the Group Policy instead.

### 3. Application

Here, Plaintiff alleges that he suffers from an ongoing disability, and United has presented no evidence to the contrary. (Even if it had, such evidence would raise a factual dispute improper for determination at the motion to dismiss stage.) Under the interpretation of section 10350.7 set out above, proof of loss was not yet required. Instead, like in *Wetzel*, California's statutory limitations period accrued at the time that United denied Plaintiff's appeal—mere days before Plaintiff filed his Complaint. Accordingly, Plaintiff's claim is well within the four-year statute of limitations period.

Having found that Plaintiff's claim is not barred by either the statutory or contractual limitations periods, the Court need not consider Plaintiff's arguments for equitable tolling.

## III. CONCLUSION

For the foregoing reasons, the Motion is **DENIED**. Defendant shall file its Answer by **May 15, 2017**.

IT IS SO ORDERED.